## CONSTITUTIONALITY OF THE RURAL SCHOOL ACT.

Court of Appeals for Holmes County.

ALBERT E. CLINE V. OATH MARTIN ET AL.

Decided, December 11, 1915.

*Schools—Arrangement of Districts—Discretion of County Board of Education Will Not be Interfered With, Unless—Members of the Board Not County Officers—Constitutionality of the New Act.*

1. What is known as the rural school code confers a broad discretion on the county board of education in the matter of the establishment of new school districts, and where this is done by attaching four sub-districts to a village school district a court will not grant relief to a complaining tax-payer in the absence of a showing of fraud or an intentional abuse of discretion.

2. There is nothing in the evidence submitted in the case under consideration which would indicate an abuse of discretion on the part of the county board, and the court would not be justified in limiting by construction the discretion so exercised.

3. Failure of the rural school act to provide for the election of the members of the county board of education by the people does not render the act invalid, for the reason that the jurisdiction of members of the county board is exclusive of territory embraced in any city school district and they are, therefore, not county officers.

4. Full power is vested in the General Assembly, under Section 3 of Article VI of the Amended Constitution of September, 1912, to provide for the organization, administration and control of the public school system of the state, and the act in question is within the limits of this power.

*Carl Schuler,* Prosecuting Attorney, *Weygandt & Ross* and *W. F. Garver,* for plaintiff.

*C. H. Workman, George W. Sharp* and *C. J. Fisher,* contra.

HOUCK, J.

This cause is here on appeal from the Common Pleas Court of Holmes County. The petition in substance avers:

That the plaintiff is an elector and tax-payer in the school district in question, and that the defendants claim to be the

members of the board of education of said district, which is known as the Nashville Village School District; that the county board of education of Holmes county, Ohio, on the 3rd day of December, 1914, attempted to pass a resolution adding certain territory, amounting to four "sub-districts," to the Nashville Village School District; that the same was done under a pretended authority given under Section 4736 of the General Code of Ohio (Ohio Laws, Volume 104, page 138); that four organized "sub-district" schools with an attendance of more than twelve pupils each were thereby discontinued; that said children as a result were transported in wagons to said Nashville school, which was a great inconvenience to said pupils so transported; that the defendants are about to issue and sell bonds in the sum of $18,000 for the erection of a school building in the said Nashville Village School District; that said county board of education is without authority to change the lines of said district; that said Section 4736 of the General Code and related sections thereto are in contravention of and repugnant to Sections 1 and 2 of the Constitution of Ohio. Wherefore plaintiff prays for injunction, and that said sections of the "New School Law of Ohio" be declared unconstitutional and null and void.

The defendants filed an answer, making certain admissions therein, but in substance being a general denial.

The plaintiff relies upon the following grounds for the relief prayed for in his petition:

*First.* That the resolution passed by the county board of education was not sufficient to give to it jurisdiction, if it had jurisdiction over the subject matter.

*Second.* That said county board of education was without authority to do what it attempted to do, and had no jurisdiction to do so, and its acts therefore are null and void.

*Third.* That there was an abuse of discretion, on the part of said county board of education, because the schools were not arranged so as to be most easily accessible to the pupils.

*Fourth.* That Section 4736, General Code, and kindred sections thereto (Ohio Laws, Vol. 104, page 138), are unconstitutional.

We are aware of the importance of the present case, and that several of the questions here presented are now, for the first time, before an appellate court in Ohio. What is denominated the "Rural School Code," being the act of February 5th, 1914, and which is a radical departure in many respects, so far as school legislation is concerned, is now attacked. The sections of the act involved in this proceeding are found in Volume 104, pages 136 and 138, Ohio Laws, and are as follows:

"Section 4728. Each county school district shall be under the supervision and control of a county board of education composed of five members who shall be elected by the presidents of village and rural boards of education in such county school district. Each district shall have one vote in the election of members of the county board of education except as is provided in Section 4728-1. At least one member of the county board of education shall be a resident of a village school district if such district is located in the county school district and at least three members of such board shall be residents of rural school districts, but not more than one member of the county board of education shall reside in any one village or rural school district within the county school district.

"Section 4728-1. All school districts other than village and city school districts within a civil township shall be jointly entitled to one vote in the election of members of the county board of education. The presidents of the board of education of all such districts in a civil township shall meet for the purpose of choosing one from their number to cast the vote for members of the county board of education." * * *

"Section 4729. On the second Saturday in June, 1914, the presidents of the boards of education of the various village and rural school districts in each county school district shall meet and elect the five members of the county board of education, one for one year, one for two years, one for three years, one for four years and one for five years, and until their successors are elected and qualified." * * *

"Section 4735. The present existing township and special school districts shall constitute rural school districts until changed by the county board of education, and all officers and members of boards of education of such existing districts shall continue to hold and exercise their respective offices and powers until their terms expire and until their successors are elected and qualified."

"Section 4736. The county board of education shall as soon as possible after organizing make a survey of its district. The board shall arrange the schools according to topography and population in order that they may be most easily accessible to pupils. To this end the county board shall have power by resolution at any regular or special meeting to change school district lines and transfer territory from one rural or village school district to another. A map designating such changes shall be entered on the records of the board and a copy of the resolution and map shall be filed with the county auditor. In changing boundary lines the board may proceed without regard to township lines and shall provide that adjoining rural districts are as nearly equal as possible in property valuation. In no case shall any rural district be created containing less than fifteen square miles."

Coming now to the first claim of plaintiff: was the resolution fixing the lines of the district in question sufficient, and did it fully comply with the requirements of Section 4736, General Code? We have examined the resolution, and we are of the opinion that it fully complies with the requirements and provisions of said statute, and that said county board of education had jurisdiction of the subject matter, and that it was fully authorized to adopt the resolution, and that it contains, in substance and in fact, all of the necessary things required by said statute.

As to the second claim of the plaintiff, that the county board of education was without authority to create the new district, let us examine the language of the statute as found in Section 4736: "*To this end the county board shall have power by resolution at any regualr or special meeting to change school district lines and transfer territory from one rural or village school district to another.*"

In the present case four "sub-districts" as they originally existed were attached to the Nashville Village School District. Could any language be more plain and explicit than the above in giving the board authority to do just what it did in the premises? Certainly not. It provides for the changing of lines and the transfer of territory from one rural or village district to another—just what was done by the county board in this case,

when it transferred the four "sub-districts" as they originally existed to the Nashville Village School District. Sub-districts not being provided for in the act of February 5th, 1914. do not now exist, and it was only the territory that was bounded by the "sub-districts" as they formerly were that was annexed.

We do not think that the county board is limited in its right to arrange districts, by simply taking the territory from one rural district and adding to another. We feel that the statute is broad enough and gives to the county board authority to take territory from a rural district and attach it to a village district.

It is contended that Nashville is not a village district, and therefore the territory in the "sub-districts" could not legally be attached. We do not think it necessary for the proper solution of this question to determine whether it was or was not a village district, because under the provisions of Section 4736 it is immaterial, for the reason that it was territory that could be attached as provided and contemplated therein.

The third contention of plaintiff is that the county board of education did not arrange the schools as to topography and population, so as to make them most easily accessible to the pupils in said territory, and thereby abused its discretion.

A county board is required to make a survey and prepare a map of the district, and to arrange the schools according to topography and population, and in such a manner as that they be most accessible to pupils in the district, in order that they may reach the schools with as little inconvenience as possible; yet the Legislature certainly intended that a broad discretion be given the county broad in this particular. The statute nowhere limits the authority of the county board in this matter, and there is nothing in the evidence submitted to the court that would indicate an abuse of authority on the part of the county board, and we do not think that a court would be justified in imposing a limitation by construction, or in any way interfering with the acts of such board in arranging the lines of the district and otherwise acting under said provisions of the statute, in the absence of proof clearly establishing fraud or gross and intentional abuse of discretion. And not finding in the present case,

on the part of the county board, any equitable grounds of fraud, or mistake, and not finding its acts wrongful, fraudulent, collusive or arbitrary, we do not feel that the board abused its discretion.

We come now to the fourth and last claim made by the plaintiff, that said sections hereinbefore referred to of the "New School Law" are unconstitutional, being in conflict with Sections 1 and 2 of Article X; also Section 26 of Article II of the Constitution of Ohio.

We may now inquire, When is a law in conflict with the Constitution, and under what circumstances and state of facts should it be declared unconstitutional?

The Legislature is a co-ordinate department of the government, and as such is invested with certain duties and responsibilities, and we think in the enactment of laws it is only fair to presume that it has considered and discussed the constitutionalty of all measures passed by it, and therefore the unconstitutionality of the act must be clear or courts will sustain it. Courts may resort to an implication to sustain a statute, but not to destroy it; and courts can not go beyond the province of legitimate construction in an attempt to save a statute. In other words, where the language used is clear, and the meaning plain, words can not be read into it or out of it for that purpose. A statute can not be declared invalid for the reason that it is unwise, unjust, unreasonable, or opposed to the spirit of the Constitution; and unless it violates some express constitutional provision it must be held valid. While we change, while we alter, while we improve in our material and social life, yet these principles of construction now exist and will continue so until time shall be no more.

We think this doctrine is well established in this state, and we need only to cite the case of *Probasco* v. *Raine, Auditor,* 50 Ohio State, page 390, where Judge Burket says:

"Whatever may be the rule elsewhere, it is clear that in this state the validity of an act passed by the Legislature must be tested alone by the constitution, and that the courts have no right to nullify a statute upon the ground that it is against public policy.

"When the Legislature is silent, the courts may declare the public policy, and mark out the lines of natural justice; but when the Legislature has spoken, within its powers conferred by the Constitution, its duly enacted statutes form the public policy, and prescribe the rights of the people, and such statutes must be enforced and not nullified, by the judicial and executive departments of the state.

"When the Legislature, within the powers conferred by the Constitution, has declared the public policy, and fixed the rights of the people by statute, the courts can not declare a different policy, or fix different rights. In this regard the Legislature is supreme, and the presumption is that it will do no wrong, and will pass no unjust laws. The remedy, if any is needed, is with the people and not with the courts."

Section 26 of Article II of the Constitution of Ohio provides:

"All laws, of a general nature, shall have a uniform operation throughout the state, nor shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the General Assembly, except as otherwise provided in this Constitution."

Section 1 of Article X provides:

"The General Assembly shall provide, by law, for the election of such county and township officers as may be necessary."

Section 2 provides:

"County officers shall be elected on the first Tuesday after the first Monday in November, by the electors of each county, in such manner and for such term, not exceeding three years, as may be provided by law."

Counsel for plaintiff urge that members of a county board of education are county officers, and must be elected by the people, and therefore the sections of the act hereinbefore referred to contravene the above sections of the Constitution of Ohio. We have now reached the place in the present case where we are called upon to pass upon, as well as to determine, who are county officers. We are pleased to cite, upon this branch of the case, the case of *State* v. *Hunt*, 84 Ohio State, page 149, where Judge Spear says:

"We have not undertaken to enter the field of definition of the term 'office' or 'officer.' As given in the books they are multitudinous, not to say multifarious. Indeed, so varied are they, scattered through the books, that the ingenious barrister may find support for almost any proposition relating to the general subject which the necessities of his case may seem to demand. But, alike maxims of the law, when used indiscriminately and without judgment, they are apt to mislead. One which seems to have met with most favor, perhaps, is that an office is a public position to which a portion of the sovereignty of the country attaches, and which is exercised for the benefit of the public. And yet, without a satisfactory definition of what is and what is not 'the sovereignty of the country' this definition seems to fail to adequately define. Manifestly, however, each case should be decided on its peculiar facts, and involves necessarily a consideration of the legislative intent in framing the particular statute by which the position, whatever it may be, is created."

In view of the statement made by the learned judge in the above opinion, we will proceed in the light of the facts and the statute under consideration, and say that a county officer is one whose right, authority and duties are created and conferred by law, and whose jurisdiction is co-extensive with the county. If our definition is correct, then and in that event a member of a county board of education is not a county officer, from the fact that his jurisdiction does not extend over the entire county, for the reason that city school districts are not included in county school districts, but are especially exempted therefrom under favor of Section 4684 of the General Code, which provides: "Each county, exclusive of the territory embraced in any city school district, * * * shall constitute a county school district." * * * The jurisdiction being a limited one—to a county school district—which does not include the county as a whole, it necessarily follows that such position is not within our definition of a county officer.

In addition to what we have already said concerning the constitutional question involved in the case at bar, we think that the entire matter is disposed of by Section 3 of Article VI of our Amended Constitution of Ohio, as adopted September 3d, 1912, which provides:

"Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds; provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such districts."

If we give to the language used in the above amendment that plain meaning which the words and sentences certainly convey, we can reach but one conclusion, and that is the Legislature had power and authority to pass an act providing for a school system in our state, and that the said constitutional provision so authorizes. The language is clear, plain, and in no way ambiguous: *"Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds."*

This certainly delegated to and gave full and complete authority and power to the Legislature to pass the school act now under consideration, and to provide for its organization, administration and control. It will further be observed that said amendment especially provides for legislation with reference to city school districts, and that the Legislature so provided in the school act by exempting city school districts from the supervision and control of county school districts, which is in accord with our theory that a member of a county school board is not a county officer, and that neither the framers of the Constitution nor the Legislature so intended.

The court is therefore unanimously of the opinion that said sections of the statute under consideration herein are not unconstitutional, and are not in conflict with or repugnant to the Constitution of Ohio, ar any article or section thereof.

We further find that none of the claims of plaintiff is well taken, and that he is not entitled to the relief prayed for in his petition, and the petition is dismissed at the costs of plaintiff.

Judgment accordingly.

SHIELDS, J., and POWELL, J., concur.