NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2664
_____

UNITED STATES OF AMERICA

v.

DEREK PELKER,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-16-cr-00240-001)
District Judge:  Honorable Yvette Kane

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 22, 2020

BEFORE:  McKEE, BIBAS, and NYGAARD, *Circuit Judges*

(Filed July 29, 2020)

_____

OPINION[*]
_____

NYGAARD, *Circuit Judge.*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Derek Pelker contends in this appeal that the District Court abused its discretion by denying him a continuance and a new trial, and erred by assigning one criminal history point for a previous conviction on harassment. We will affirm.

In a second superseding indictment the Government charged Pelker with four counts of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, four counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and related firearm offenses.[1] Acting *pro se*, with court-appointed stand-by counsel, Pelker entered a not guilty plea to all counts. The Government transferred him to the Dauphin County Prison for his trial approximately two weeks before it commenced.

On the morning of jury selection Pelker unsuccessfully moved for a continuance. He contends that he was unable to adequately prepare for trial after the government moved him to the Dauphin County Prison. His claim is based on the following: receiving writing material only one week before trial, not having an opportunity to review discovery or mark exhibits, having only brief access to the law library, and getting inadequate sleep because of the prison schedule. In light of these, Pelker maintains the District Court abused its discretion by denying him a continuance, and later, a new trial.

We generally assess the District Court's use of discretion on a denial of a motion for continuance by balancing the degree to which the appellant's rights were impaired against the efficient administration of justice and the rights of other defendants who are

---

[1] The Government also charged Pelker with two counts of brandishing a firearm in furtherance of a crime of violence (18 U.S.C. § 924(c)) and two counts of felon in possession of a firearm (18 U.S.C. § 922(g)).

impacted by the decision.[2]  The record demonstrates that Pelker had access to discovery more than one year before trial and he received assistance from his stand-by counsel, particularly in the days leading up to trial.  He has failed to show with any specificity how his rights were harmed by having to proceed with the trial as scheduled.  Moreover, as the District Court noted, Pelker had opportunities to make the request well before the start of jury selection.  Granting a last-minute continuance would have delayed trial, burdening jurors, witnesses and co-defendants.  We conclude that the District Court did not abuse its discretion here.

We next turn to Pelker's claims of prejudice during the trial.[3]  On the first day, the Government asked co-defendant Ryan Miller about whether he observed Pelker carrying a particular firearm.  Miller responded:  "He was in the halfway house most of the time, so he didn't carry it all the time."[4]  Pelker objected and moved for a mistrial.  The Government requested that the statement be stricken from the record.  The District Court granted the request to strike and instructed the jury "[w]hen testimony is ordered stricken from the record, you must ignore it as though it has never been heard."[5]  It repeated in its final instruction to the jury that stricken testimony is not evidence.

On the third day of trial, Special Agent Geoffrey Ford (an investigator with the Federal Bureau of Investigation) answered the Government's question about his

---

[2] *See United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991); *United States v. Olfano*, 503 F.3d 240, 245-46 (3d Cir. 2007).
[3] We review for an abuse of discretion.  *See United States v. Riley*, 621 F.3d 312, 335-36 (3d Cir. 2010).
[4] App. 101.
[5] App. 102.

3

familiarity with the voice of Pelker's girlfriend by saying: "We've interviewed her twice. I've also listened to some phone calls that Derek Pelker has made to her from various prisons."[6] Pelker objected and was overruled. The Government then asked Ford how he knew Pelker's voice and he responded: "I've met with the defendant on a number of occasions. I've also listened to his voice throughout this trial. I've also heard his voice on prison phone calls."[7] The District Court denied Pelker's request for a mistrial but instructed Ford to refrain from mentioning the origin of the phone calls.

On appeal, Pelker argues that all of these statements are prejudicial because they portray him as an incorrigible, imprisoned criminal. He also stresses that the District Court never issued a corrective instruction to the jury in response to Ford's statements. However, as the District Court observed in its denial of Pelker's motion for a new trial, the statements in question were neither persistent nor pronounced and the evidence against Pelker—which included co-conspirator and victim testimony as well as video and photographs—was quite strong. Moreover, we conclude that the District Court responded appropriately to the statements of both witnesses to mitigate any potential prejudice. The District Court did not abuse its discretion by denying the motion for a new trial on this basis.

Finally, Pelker claims the District Court erred by adding one criminal history point for his 2015 state conviction for harassment under 18 Pa. Con. Stat. § 2709(a)(1).[8] This

---

[6] App. 116.

[7] App. 117.

[8] We review the district court's interpretation of the Guidelines de novo and relevant findings of fact for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007).

4

placed him in criminal history category V. United States Sentencing Guidelines § 4A1.2(c)(1)[9] precludes from the calculation of criminal history points certain enumerated and "similar" offenses. Pelker contends the District Court erred by failing to exclude his conviction because, in the Pennsylvania Code, harassment seems to be similar to disorderly conduct, an enumerated offense under the Guideline.

To assess "similarity" an Application Note to the Guidelines states that the court should use a "common-sense" approach that includes consideration of factors such as "(i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct."[10] The summary harassment offense for which Pelker was convicted consists of the following: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same."[11] Regarding disorderly conduct, the Pennsylvania Code states:

> A person is guilty of disorderly conduct if, with intent to
> cause public inconvenience, annoyance or alarm, or

---

[9] § 4A1.2(c): "Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows: (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense: . . . Disorderly conduct or disturbing the peace."
[10] § 4A1.2(c), Application Note 12(A).
[11] § 2709(a)(1).

> recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.[12]

Pelker emphasizes that, like disorderly conduct, his harassment conviction was a summary offense.[13] He also notes that physically threatening behavior is common to both. But disorderly conduct does not involve an intent to harm a person, only an intent to create a public disturbance. And the difference between an intent to cause personal harm and an intent to cause public inconvenience is fundamental, outweighing any overlapping conduct or similar grading. This point is reinforced by our examination of Pelker's conduct that resulted in his conviction. The Presentence Report notes that he physically attacked his victim, causing minor injury. This act is much more akin to simple assault[14] (which is not an enumerated offense) or perhaps even felony aggravated assault[15] than it is to creating a public disorder. We therefore conclude that harassment is not similar to disorderly conduct for purposes of Section 4A1.2. The District Court did not err.

For all of these reasons we will affirm the District Court's judgment of conviction and sentence.

---

[12] 18 Pa. Con. Stat. § 5503(a).

[13] *See* § 2709(c)(1). Disorderly conduct is graded a misdemeanor of the third degree in cases of "substantial harm or serious inconvenience" or persistent conduct following reasonable warning, but otherwise is a summary offense. 18 Pa Con. Stat. § 5503(b).

[14] *See* 18 Pa. Con. Stat. § 2701.

[15] *See* 18 Pa. Con. Stat. § 2702 (a)(1).