The C & P TELEPHONE COMPANY, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 76–1663.

United States Court of Appeals, District of Columbia Circuit.

Argued June 13, 1977.

Decided Aug. 5, 1977.

Vincent H. Cohen, Washington, D. C., with whom Anne White Foley, Washington, D. C., was on the brief, for petitioner.

Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D. C., with whom

Alfred G. Albert, Acting Solicitor of Labor and Harry L. Sheinfeld, Atty., U. S. Dept. of Labor, Washington, D. C., were on the brief, for respondent.

Before WRIGHT and ROBINSON, Circuit Judges and HOWARD T. MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by Chief Judge MARKEY.

MARKEY, Chief Judge, United States Court of Customs and Patent Appeals:

This petition [1] by C & P Telephone Co. ("C & P") seeks to set aside the order of the Benefits Review Board ("Board") which affirmed the refusal of the Administrative Law Judge ("ALJ") to invoke § 8(f) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908(f) (1970), in a claim for compensation arising under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U.S.C. § 901 *et seq.*, as made applicable to the District of Columbia by the Workmen's Compensation Act of the District of Columbia, 45 Stat. 600, 36 D.C. Code § 501 *et seq.*, (the combined Acts are referred to hereinafter as "the Act"). The respondent is the Director of the Office of Workers' Compensation Programs, United States Department of Labor.[2] We grant the petition and set aside that portion of the Board's order which refused to invoke § 8(f).

## STATUTORY PROVISIONS

The relevant statutory provisions are:

§ 8(f) of the Act, as amended in 1972 by Pub.L. No. 92–576, 86 Stat. 1257, 33 U.S.C. § 908(f) (Supp. V 1975), effective November 26, 1972 ("new § 8(f)"):

---

* Sitting by designation pursuant to Title 28, U.S.C. § 293(a).

1. Under 33 U.S.C. § 921(c) (Supp. V 1975).

2. The Director is delegated the duties and responsibilities for administration and enforcement of the Longshoremen's and Harbor Workers' Compensation Act and its statutory exten-

sions, including the District of Columbia Workmen's Compensation Act. Among those duties is the authorization of payments from the Special Fund maintained in the United States Treasury under § 44 of the Act, 33 U.S.C. § 944 (Supp. V 1975), for compensation pursuant to § 8(f) of the Act, 33 U.S.C. § 908(f) (Supp. V 1975).

§ 908.  Compensation for disability.

Compensation for disability shall be paid to the employee as follows:

    \*    \*    \*    \*    \*    \*

(f) Injury increasing disability:

(1) In any case in which an employee having an *existing permanent partial disability* suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury.  If following an injury falling within the provisions of subdivision (c)(1)–(20) of this section, the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater.  In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an *existing permanent partial disability*, the employer shall provide in addition to compensation under paragraphs (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only.  If following an injury falling within the provisions of subdivision (c)(1)–(20) of this section, the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater.

In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide in addition to compensation under paragraphs (b) and (e) of this section, compensation for one hundred and four weeks only.

(2) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title. [Emphasis added.]

§ 8(f) of the Act, prior to the 1972 amendment, 33 U.S.C. § 908(f) (1970) ("old § 8(f)"):

§ 908.  Compensation for disability.

Compensation for disability shall be paid to the employee as follows:

    \*    \*    \*    \*    \*    \*

(f) Injury increasing disability:

(1) If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a *previous disability*, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury: *Provided, however,* That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disability.  Such additional compensation shall be paid out of the special fund established in section 944 of this title.

(2) In all other cases in which, following a previous disability, an employee receives an injury which is not covered by (1) of this subdivision, the employer shall provide compensation only for the disability caused by the subsequent injury.  In determining compensation for the subsequent injury or for death resulting therefrom, the average weekly wages shall be such sum as will

reasonably represent the earning capacity of the employee at the time of the subsequent injury. [First emphasis added.]

## BACKGROUND

On October 16, 1972, claimant Mrs. Jacqueline M. Glover filed a claim for workmen's compensation benefits for a back injury sustained on September 23, 1971 at her place of employment by C & P in the District of Columbia when an elevator in which she was riding is alleged to have descended too rapidly from the sixth floor to the first floor causing her to fall to her knees.

Mrs. Glover had a long history of recurring back ailment prior to this accident on September 23, 1971. In 1962 she injured her back when she fell on the street. This injury was sufficiently severe to require five treatments from a chiropractor, Dr. Angel, and treatment by a physician, Dr. Fitzgerald. She advised C & P that she was unable to work for three days as a result of this accident. Mrs. Glover also sued the District of Columbia to recover for this back injury..

In 1967, Mrs. Glover injured her back again when she fell down her basement steps. She was absent from work and her chiropractor, Dr. Angel, advised C & P that she was absent due to acute lumbosacral strain.

In April, 1968, Mrs. Glover was unable to arise from a chair because of severe back pain. As a result, she was treated for two weeks with traction and pain medication. She missed work for eleven days, and Dr. Traum, her family doctor, advised C & P that she was suffering from "[l]ow back syndrome, probable disc syndrome."

In August and September, 1968, Mrs. Glover had a recurrence of back trouble. She suffered a back injury from no identifiable cause when, in her words, "I just got out of bed one morning and my back was bad." As a result of this back injury, she was hospitalized, X-rayed, and put in traction for several weeks. Dr. Traum advised her to have a myelogram and surgery, but Mrs. Glover was apprehensive.

From August through October, 1968, Mrs. Glover was absent from work 52 days because of back problems. Dr. Traum advised C & P that Mrs. Glover's absence was due to "[a]cute low back strain, probably disc" and "[a]cute disc syndrome." In November and December, 1968, Mrs. Glover missed 15 days from work because of recurring back trouble.

Mrs. Glover testified that in 1969 she injured her back from no identifiable cause. As she explained, "my back just went out again." During the first half of 1969, she worked part-time for 32 days and was absent from work for 10 days due to back trouble.

By June, 1969, Mrs. Glover's absence rate at C & P was so excessive that her supervisor requested that she be examined by C & P's Medical Department. Her supervisor asked the Medical Department:

I'd like to know if this girl is really able ph[y]sically to work and if not what would Medical recommend.

The C & P Medical Director reported back to Mrs. Glover's supervisor on July 22, 1969 as follows:

At the time of this employee's health evaluation examination in the Medical Department at the request of the Commercial Department the significant findings were her marked obesity and the fact that she is wearing a back brace to control a back disorder. There is no doubt that her back condition would improve if she reduced her weight considerably. Certainly, her absence has been excessive, but I am unable to forecast her attendance in the future. Much will depend on the condition of her back. * * Unless she can be motivated to bring her weight down to a more average figure, I expect that she will continue to have trouble with her back and consequently, have more absence.

Mrs. Glover's absences from work because of back trouble continued. She testified that in March, 1970 she suffered a back injury while stepping out of her car. Following this accident, Mrs. Glover was out of

work 47 days and worked part-time for 27 days. She was placed in traction and medicated. In April, 1970, Dr. Hustead, a neurosurgeon who examined Mrs. Glover, diagnosed that she had a ruptured lumbar disc. Dr. Hustead recommended hospitalization for traction and physical therapy, and if she did not respond to that, he recommended a myelography.

In March, 1971, Mrs. Glover again missed 3 days from work because of back trouble. On September 23, 1971, the elevator accident occurred which gave rise to this compensation claim.

C & P, a self-insured employer, paid Mrs. Glover compensation benefits until October 18, 1973 when C & P controverted the claim on the ground that the elevator accident could not have occurred as described by claimant. C & P continued to pay claimant sickness disability benefits and on October 26, 1974 claimant was retired on a C & P service pension for total disability. In her present claim, Mrs. Glover sought temporary total disability workmen's compensation benefits from October 18, 1973, reimbursement for medical expenses, and an adjudication of permanent total disability.

### ADMINISTRATIVE LAW JUDGE

The claim was referred to an Administrative Law Judge for a formal hearing which was held on February 20, 1975.

Three medical experts testified concerning Mrs. Glover's back problems. Dr. Hustead testified:

Q. [by claimant's counsel] Doctor, you have in your records some history of incidents to her back prior to September of 1971. I would ask you now if you have an opinion, Doctor, whether or not the incident that she related to you regarding the elevator in 1971 was the competent producing cause of the condition which necessitated the myelogram and subsequent surgery.

A. [Dr. Hustead]   Yes, I feel that it was.

Dr. Traum testified that, prior to her September, 1971 accident, Mrs. Glover had a weak back, that injury to her back could be precipitated by a traumatizing event such as sneezing or twisting in bed, and he confirmed his statement in a letter dated May 23, 1974:

[F]or the past eight years she has had intermittent trouble with lower back pain. This is probably due to a lumbar disc syndrome and has been very disabling to this patient, causing her to be absent from work for long periods of time because of her severe pain and inability to ambulate.          ·

Dr. Epps testified that the condition of Mrs. Glover's back at any one time represented an accumulation of all that had ever happened to her back, that all of the prior injuries to Mrs. Glover's back contributed to her resulting disability, and that the September, 1971 accident aggravated Mrs. Glover's preexisting condition.

The ALJ made the following combined findings of fact and conclusions of law:[3]

(1) "Claimant sustained accidental injury in an elevator * * * on September 23, 1971."

(2) "Claimant's injury of September 23, 1971 arose out of and in the course of her employment."

(3) "Claimant is permanently totally disabled" (as of February 20, 1975, the hearing date).

(4) "Claimant's injury of September 23, 1971 caused her permanent total disability and no contribution from the Special Fund [33 U.S.C. § 944] is merited for a prior back condition."

The ALJ's opinion accompanying the findings and conclusions contained the following statements material on this appeal:

The Employer contends that if Claimant has suffered a compensable injury, then it is partially due to prior back injuries and that the Special Fund, 33 U.S.C. § 944, should therefore share in the cost of compensation.

---

3. The ALJ's decision is reported in summary form in 3 BRBS 48 (ALJ).

Contribution from the Special Fund is not merited where the injury in question could by itself support an award of permanent total disability benefits. *Carpenter v. Potomac Iron Works, Inc.*, 1 BRBS 332, BRB No. 74–208 (February 28, 1975); *Miller v. Maryland Shipbuilding and Drydock Company*, BRB No. 75–139 (September 26, 1975).

In this case Dr. Hustead testified that the elevator incident was the "competent producing cause" of Claimant's condition. (Tr. 63, 86). Dr. Traum testified that Claimant was suffering from back weaknesses which would be aggravated by trauma. (Tr. 242). Finally, Dr. Epps testified that "at the very least" the elevator incident caused an aggravation of Claimant's pre-existing condition. (Tr. 293). To limit the Employer's liability on these facts would be directly contrary to the off-stated maxim that "employers accept with their employees the frailties that predispose them to bodily hurt." *J. V. Vozzolo, Inc. v. Britton*, 126 U.S.App. D.C. 259, 377 F.2d 144 (1967). It is well settled that an employer is liable for all consequences of a work related injury, which aggravates a pre-existing condition. *J. V. Vozzolo, Inc. v. Britton, supra*, 126 U.S.App.D.C. at 262–263, 377 F.2d at 147–148; *Howell v. Einbinder*, 121 U.S. App.D.C. 312, 350 F.2d 442, 443 (1965); *Lee v. National Realty*, BRB No. 74–183 (January 13, 1975).

Moreover, although Claimant has a long history of back ailments, including back injuries unrelated to her employment in 1962, 1967, 1968, and 1970, and missed work 3 days in 1962, 1 day in 1967, 67 days in 1968, 10 days in 1969, and 47 days in 1970, all due to back problems, which were known to the Employer, these pre-existing back conditions cannot be deemed to constitute "a previous disability," pursuant to Section 8(f) of the unamended Act, or "an existing permanent partial disability," under Section 8(f) of the Act as amended, [The ALJ stated in a footnote: "In view of the inapplicability of either the preamendment or postamendment Section 8(f), it is unnecessary to reach the question of which version of the Section should apply."] at the time of Claimant's injury, since the employment record reflects that during a lengthy period immediately preceding the accident, from June 1970 to the date of the accident on September 23, 1971, Claimant worked steadily and lost only 3 days due to unspecified "back trouble." (Employer's Exhibit 6). Claimant and her husband also testified that, during this period, Claimant engaged in normal physical activity, including performing her housework and participating in dancing and other strenuous activities. (Tr. 94–95; 255–262). The record, therefore, would not support a finding that the Claimant was disabled in an economic sense by a pre-existing back condition at the time of the September 23, 1971 accident. *Aleksiejczyk v. Atlantic and Gulf Stevedores, Inc.*, BRB No. 74–202 (June 16, 1975) [4]; *Shillington v. W. J. Jones & Son, Inc.*, BRB No. 74–128 (November 13, 1974); *Burke v. Metropolitan Stevedore Company*, BRB No. 74–207 (July 18, 1975).

It is concluded that Claimant's injury of September 23, 1971 caused her disability and no contribution from the Special Fund is merited for a prior back condition.

C & P appealed to the Benefits Review Board seeking reversal of the conclusion that Mrs. Glover's previous back ailment did not bring the case within § 8(f) coverage. C & P contended: (1) that it was error to conclude that aggravation of a previous disability is not covered by § 8(f); (2) that it was error to conclude that a physical disability must also be an economic disability in order to come within § 8(f) coverage; and, (3) that the specific finding that C & P knew of Mrs. Glover's long history of back disabilities required the conclusion that § 8(f) applied.

4. *Rev'd sub nom. Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs*, 542 F.2d 602 (3rd Cir. 1976).

## BENEFITS REVIEW BOARD

The Board, with one dissent, affirmed.[5] The majority held that old § 8(f) governed the case because claimant "sustained a pre-amendment injury," meaning an injury prior to the 1972 amendment, and stated:

[I]n order for [old] Section 8(f) to apply to limit the employer's liability, it must be demonstrated that claimant was suffering from a "previous disability" manifest to the employer and that claimant was not rendered permanently and totally disabled solely due to her work-related injury.

After evaluating the evidence submitted, the administrative law judge determined that claimant's pre-existing back condition could not be deemed to constitute a "previous disability" pursuant to Section 8(f) of the unamended Act. It was concluded that the record "would not support a finding that the claimant was disabled in an economic sense by a pre-existing back condition at the time of the September 23, 1971 accident."

The employer argues that the administrative law judge's position is contrary to law, because there is no requirement that a Section 8(f) disability be an economic disability, and, even if there is, there is not substantial evidence in the record to support a finding of no economic disability. We cannot agree.

The Board has held on numerous occasions that the term "disability", as it is used in Section 8(f), includes both an employment-related disability and one unrelated to employment, and is an economic and not a medical concept. *Love v. Bender Welding & Machine Co.*, 3 BRBS 183, BRB No. 75–231 (Jan. 23, 1976); *Burke v. Metropolitan Stevedore Co.*, 2 BRBS 94, BRB No. 74–207 (July 18, 1975); *Aleksiejczyk v. Atlantic and Gulf Stevedores, Inc.*, 1 BRBS 541, BRB No. 74–202 (June 16, 1975.)[6]

We hold that there is substantial evidence in the record to support the administrative law judge's conclusion that claimant's previous back problems were not economically disabling and constituted a pre-existing condition, and not a previous disability, so that Section 8(f) is inapplicable. It is therefore unnecessary to reach the merits of whether claimant's back problem was manifest to the employer and whether the work-related injury was the sole cause of claimant's permanent total disability.

The dissenting board member reasoned differently:

I respectfully dissent from the majority opinion affirming the administrative law judge's conclusion that claimant is permanently and totally disabled as a result of this work connected injury. From the record itself the accident is clearly *not* the sole cause of claimant's total disability. Use of semantics in concluding that a pre-existing condition is not a previous disability in this instance is erroneous. The record contains evidence that claimant suffered numerous back injuries prior to the injury in question. Moreover, there is extensive unrebutted evidence that the claimant could not work full time for a total of over 200 days in the ten years immediately preceding the injury as a result of back problems. Note claimant missed 47 days in 1970 which was 1 year before this injury.

In addition, I believe it was error to find that it was unnecessary for the Board to reach the merits of whether claimant's back problem was manifest (although the record is replete with evidence of claimant's long history of back problems) since the accident was not the sole cause of her permanent disability. "Disability" is not a completely economic concept since one must have a physical or medical condition which when combined with an inability to work becomes the concept of disability as used in Section 8(f) in both the amended and unamended

---

5. The board's decision is reported at 4 BRBS 23.

6. *Rev'd sub nom. Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs, supra* note 4.

Act. Therefore, in my opinion, the Special Fund would be responsible for the balance after 104 weeks.

## ISSUE

The sole issue is whether Mrs. Glover's compensation for total disability shall be paid totally by C & P or, after 104 weeks, paid from the Special Fund under § 8(f).

## OPINION

### I. *New § 8(f) Is The Applicable Statute*

■ The first question is whether old § 8(f) or new § 8(f) is the applicable statute. The board held that old § 8(f) should be used because the accident occurred in 1971. We disagree.

In *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Supreme Court stated the principle that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."

First, there is no manifest injustice in deciding the case under new § 8(f). Both parties to this appeal agree that new § 8(f) is the applicable statute. Mrs. Glover, the claimant, is not a party to this appeal and has no interest in it, being assured of full compensation benefits regardless of the outcome.

Second, there is no statutory direction or legislative history against applying new § 8(f). When Congress amended § 8(f) in 1972, it provided in § 22 of Pub.L. No. 92–576, 86 Stat. 1265, that: "The amendments made by this Act shall become effective thirty days after the date of enactment [October 27, 1972] of this Act." By contrast, when other parts of § 8 of the Act were amended in 1948 and again in 1956,

Congress expressly stated that those amendments were not applicable to cases involving earlier-occurring injuries.[7]

Accordingly, under the principle stated by the Supreme Court in *Bradley, supra*, we hold that new § 8(f) is the applicable statute.

### II. *The Purpose Of The Special Fund Under New § 8(f)*

New § 8(f) provides that in any case in which an employee who has an "existing permanent partial disability" suffers an on-the-job injury which results in permanent total disability, the employer shall provide compensation payments to that employee for 104 weeks, after which the remainder of the compensation due to the employee shall be paid out of the Special Fund accumulated by payments from insurance carriers and self-insurers.

In *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949), the Supreme Court explained the purpose of the Special Fund under old § 8(f), enacted in 1927, as "the prevention of employer discrimination against handicapped workers." *Id.* at 201, 69 S.Ct. at 504. The Court further stated:

We must look to the explanation of congressional intent behind the subsection. A witness at a hearing on the measure outlined his reasons for favoring the provision in the following manner: "The second injury proposition is as much to the advantage of the employer and his interests as it is for the benefit of the employee. It protects that employer who has hired, say, a one-eyed worker who goes and loses his other eye and becomes a total disability. The employer without this sort of thing would have to pay total permanent disability compensation. Then, on the other hand, this also protects the worker with one eye from being denied employment on account of his be-

---

7. Section 6 of the Act of June 24, 1948, 62 Stat. 602, provided that: "The provisions of this Act shall be applicable only to injuries or deaths occurring on or after the effective date hereof [June 24, 1948]." Section 9 of the Act of July 26, 1956, 70 Stat. 654, provided that: "The amendments made by * * * this Act shall be applicable only with respect to injuries and death occurring on or after the date of enactment of this Act [July 26, 1956] * * *."

ing an extra risk. Now, by simply taking this up in this way it is possible to protect both the employer and to protect the one-eyed employee also." [*Id.* at 201–02, 69 S.Ct. at 505. Footnote omitted.]

Professor Larson further explains the purpose of these so-called "second injury funds":

As soon as it became clear that a particular state had adopted a rule requiring an employer to bear the full cost of total disability for loss of the crippled worker's remaining leg or arm, employers had a strong financial incentive to discharge all handicapped workers who might bring upon them this kind of aggravated liability. When loss of a single eye might mean a compensation liability of $5,000 for a man with two good eyes but $26,000 for a man with only one, the compensation insurance premium on the latter would naturally be markedly greater.

\*     \*     \*     \*     \*     \*

Under either rule, then, the compensation system operated unsatisfactorily in the case of previously impaired workers: Under apportionment, they received far less than their actual condition required to prevent destitution; under nonapportionment they lost their jobs. Second injury funds \* \* \* are the solution to this dilemma. [2 A. Larson, *The Law of Workmen's Compensation*, § 59.31, at 10–285 (1976) (footnotes omitted).]

When Congress amended § 8(f) in 1972, it reaffirmed the basic purpose of the Special Fund—protecting previously impaired workers. The Senate report from the Committee on Labor and Public Welfare had this statement regarding the provision which became new § 8(f):

*Injury Following Previous Impairment*

The bill amends section 8(f) of the Act (Section 9 of the bill) in order to limit the burden on employers in so-called second injury cases. Many employers have an inaccurate impression regarding the liabilities for workmen's compensation when they employ handicapped workers. It is unfortunately a widespread belief that an employer is subjected to burdensome compensation costs where a handicapped worker receives an injury at the new place of employment. The provision in the bill makes clear that the employer's responsibility for the subsequent or second injury is limited to the scheduled award for the second injury or 104 weeks, whichever is greater. The remaining obligation to pay that employee where he is totally or partially disabled will fall upon the special funds existing under Section 44 of the Act. This method of spreading the risk among all employers is intended by the committee to encourage the employment of handicapped workers. It is strongly recommended by the National Commission [on State Workmen's Compensation Laws]. [S.Rep. No. 92–1125, 92nd Cong., 2nd Sess. 7 (1972).]

The House report from the Committee on Education and Labor contained a similar statement:

INJURY FOLLOWING PREVIOUS IMPAIRMENT

The bill amends section 8(f) of the Act (Section 9 of the bill) in order to limit the burden on employers in so-called second injury cases. Many employers have an inaccurate impression regarding the liabilities for workmen's compensation when they employ handicapped workers. It is unfortunately a widespread belief that an employer is subjected to burdensome compensation costs where a handicapped worker received an injury at the new place of employment. The provision in the bill makes clear that the employer's responsibility for the subsequent or second injury is limited to the scheduled award for the second injury or 104 weeks, whichever is greater. The remaining obligation to pay that employee where he is totally or partially disabled will fall upon the special funds existing under Section 44 of the Act. This method of spreading the risk among all employers is intended by the committee to encourage the employment of handicapped workers. [H.Rep. No. 92–1441, 92nd Cong., 2nd Sess. 8 (1972), *reprinted in* [1972] U.S. Code Cong. & Admin.News, pp. 4698, 4705–06.]

■ We note that both reports use the subtitle "Injury Following Previous *Impairment*" (emphasis added) and that both reports state the purpose as "encourag[ing] the employment of handicapped workers." Therefore, it was the clear intent of Congress to encourage the employment and retention [8] of handicapped workers—individuals having a previous impairment.

Thus the purpose of new § 8(f) is to prevent discrimination against handicapped workers in hiring and firing, a discrimination encouraged by the remainder of the Act were it not for § 8(f). The Act makes the employer liable for compensation. Hence, the employer risks increased liability when he hires or retains a partially disabled worker. By virtue of the contribution of the previous partial disability, such a worker injured on the job may suffer a resulting disability greater than a healthy worker would have suffered. Were it not for the shifting of this increased compensation liability from the employer to the Special Fund under § 8(f), the Act would discourage employers from hiring and retaining disabled workers.

■ New § 8(f) uses the terms "existing permanent partial disability" whereas old § 8(f) used "previous disability." [9] The legislative history of the 1972 amendment does not explain why Congress changed the terminology nor does it explain the meaning of the new terminology. We conclude that Congress did not intend any change in the law by virtue of this change in wording. The Third Circuit reached the same conclusion in *Atlantic & Gulf Stevedores, Inc. v. Director, Office Workers' Compensation Programs,* 542 F.2d 602, 607 (1976).

III. *"Disability" Under New § 8(f) Is Not Limited To An Economic Concept*

■ The ALJ expressed the view that "[t]he record * * * would not support a finding that the Claimant was disabled in an economic sense by a pre-existing back condition at the time of the September 23, 1971 accident." The Board agreed with the ALJ stating "the term 'disability', as it is used in Section 8(f), * * * is an economic and not a medical concept."

The error in this view is that it frustrates the intent of Congress. Such a construction defeats the very purpose of new § 8(f) by leaving many workers with physical disabilities without the protection intended by Congress.

The genesis of the "economic concept" of the term "disability" is the statutory definition found in § 2(10) of the Act, 33 U.S.C. § 902(10) (1970), which states:

"Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.

In *American Mutual Insurance Co. v. Jones,* 138 U.S.App.D.C. 269, 271, 426 F.2d 1263, 1265 (1970), this court stated: "The Act makes clear that 'disability' is an economic and not a medical concept [citing the § 2(10) definition in a footnote]." This statement appears in the part of the opinion which deals with the question of whether the employee was permanently totally disabled. In its context, the statement was correct. But when the issue is whether § 8(f) should be invoked, the statement does not square with the intent of Congress. The Third Circuit explained this in *Atlantic & Gulf Stevedores, supra,* at 609:

In the compensation context, the quoted language in *Jones* is an unexceptional proposition. But if it were to be applied for the purpose of overcoming the liability of the Special Fund, it would defeat the very purpose of § 8(f). Indeed, that section would be transformed into a veritable table Catch-22. Any employer who in reliance on § 8(f) hired a disabled person would immediately lose the statutory limitation on his liability, since upon hiring a

---

8. In considering the purpose of the statute, there is no rational distinction between *employing* a handicapped individual and *retaining* an existing employee who develops a handicap.

9. Other parts of § 8(f) were changed to conform the subsection to the new method of calculating benefits. Those changes are not material here.

handicapped worker any preexisting economic disability would terminate. The result is, of course, absurd, and is inconsistent with the policy objectives discussed in the *Lawson* case.

*Accord, Nacirema Operating Co., Inc. v. Benefits Review Bd.,* 538 F.2d 73 (3rd Cir. 1976).

In *Lawson v. Suwannee Fruit & S.S. Co., supra,* the Supreme Court considered the meaning of the term "disability" as used in old § 8(f) and held that Congress did not intend for it to have the meaning given in the foregoing statutory definition found in § 2(10) of the Act. *Lawson* involved an employee who had lost the sight of one eye in an accident unconnected with his employment and then lost the sight of the other eye in an employment-related accident. The Court held that the employee's "previous disability" did not have to arise out of the course of employment as seemingly required by mechanically combining the statutory definition of "disability" with the statutory definition of the term "injury" found in § 2(2) of the Act. The reasoning used by the Supreme Court is relevant in following the intent of Congress. The Supreme Court stated:

> Statutory definitions control the meaning of statutory words, of course, in the usual case. But this is an unusual case. If we read the definition into § 8(f)(1) in a mechanical fashion, we create obvious incongruities in the language, and we destroy one of the major purposes of the second injury provision: the prevention of employer discrimination against handicapped workers. We have concluded that Congress would not have intended such a result. [336 U.S. at 201, 69 S.Ct. at 504.]

The Court concluded:

> On the basis of the incongruity involved in applying the definition mechanically, the unmistakable purpose of the second injury fund, and the interpretation of the State statute on which the federal act is based, we conclude that the term "disability" was not used as a term of art in § 8(f)(1)   *   *   *.   [*Id.* at 206, 69 S.Ct. at 507.]

The Director argues that the words "permanent partial disability" are found in the heading for § 8(c) of the Act, 33 U.S.C. § 908(c) (1970), and that reference should be made to § 8(c) when defining these words in § 8(f). Section 8(c) defines the schedule of compensation for loss of or permanent loss of use of specified parts of the body (§ 8(c)(1)–(19)) (loss of one arm, one leg, one hand, etc.) and disfigurement (§ 8(c)(20), irrespective of loss of wage-earning capacity. It also covers "all other cases" (§ 8(c)(21)) of permanent partial disability where wage-earning capacity has been reduced. The Director's contention is too narrow. It is true that the situations listed in § 8(c)(1)–(20) or § 8(c)(21) would qualify as a permanent partial disability under new § 8(f), but cases listed in § 8(c) are themselves compensable and the term "disability" under § 8(f) is not limited to such cases. For example, if a worker with a serious permanent back impairment (one of the "other cases") is still able to perform work adequately, that worker has a physical disability but not an economic disability, because his wage earning capacity is not reduced. But this worker nevertheless poses an increased compensation risk to his employer by virtue of his physical disability. If the "all other cases" under the third sentence of new § 8(f)(1) were interpreted to require economic disability, the employer would be encouraged to fire him, and the congressional purpose behind new § 8(f) would be frustrated.

To summarize, the term "disability" in new § 8(f) can be an economic disability under § 8(c)(21) or one of the scheduled losses specified in § 8(c)(1)–(20), but it is not limited to those cases alone. "Disability" under new § 8(f) is necessarily of sufficient breadth to encompass those cases, like that before us, wherein the employee had such a serious physical disability in fact that a cautious employer would have been motivated to discharge the handicapped employee because of a greatly increased risk of employment-related accident and compensation liability.

## IV. The Requirements of New § 8(f) Are Satisfied Here

In the case at bar, the ALJ's finding that Mrs. Glover's back problems "were known to the Employer" is supported by substantial evidence. The record shows that Mrs. Glover's supervisor requested C & P's Medical Department to evaluate Mrs. Glover's back problem and that the Director of the Medical Department gloomily responded: "* * * I expect that she will continue to have trouble with her back and consequently, have more absence." Thus, from the record, there can be no question that Mrs. Glover's back condition was *manifest* to C & P.[10]

The subsection requires that the disability be "existing," "permanent," and "partial." While employees may occasionally complain of a "bad back" and their complaints may be both temporary and difficult to authenticate, the record here unequivocally establishes that Mrs. Glover's previous back condition was a serious and longstanding case of lumbar disc syndrome. The ALJ apparently thought that Mrs. Glover's previous back problem was not "existing" or was not "permanent" at the time of the elevator accident on September 23, 1971. We find no substantial evidence to support that view. The record shows an unbroken chain of frequent work absences because of back trouble from 1962 to September 23, 1971. Though her last work absence occurred six months before the accident and Mr. and Mrs. Glover testified to strenuous activities, there is no evidence that the previous disability had been healed; to the contrary, Dr. Traum testified that Mrs. Glover's back problem could be precipitated by minor events such as sneezing or twisting. Dr.

Epps testified that Mrs. Glover's *pre-existing condition* was *aggravated* by the elevator accident. On appeal, the Director agreed that the seriousness of Mrs. Glover's injury was increased by the pre-existing frailty of her back. See note 11, *infra*. Thus it is clear that on September 23, 1971, Mrs. Glover had an "existing permanent partial disability" for § 8(f) purposes.

New § 8(f) also requires that the employee's total permanent disability "not * * be due solely to that [second] injury." The ALJ apparently concluded that the elevator accident was the *sole* cause of Mrs. Glover's total disability. Again, there is no substantial evidence to support that view. Dr. Hustead's agreement that the elevator accident was "the competent producing cause" is at best ambiguous. If Dr. Hustead meant that the elevator accident *precipitated* the total disability, the testimony of all three medical experts is uniform—that Mrs. Glover's present total disability is the accumulation of everything that ever happened to her back. The evidence establishes that the elevator accident was not the sole cause of, but just the final event in a long chain of events leading up to, Mrs. Glover's present total disability.[11]

The Director further argues that § 8(f) can never be applied in an aggravation case, contending that the subsection applies only when two unrelated injuries combine. The legislative purpose, however, would be frustrated by such an artificial distinction. Properly interpreted, new § 8(f) must apply regardless of whether the second injury is of a nature unrelated to that of a previous disability. We note, also, that coverage under § 8(f) has been allowed in aggravation

---

10. Prior cases have established that the preexisting "disability" must have been manifest to the employer before § 8(f) can be invoked. *See Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs, supra; Dillingham Corp. v. Massey*, 505 F.2d 1126 (9th Cir. 1974); *American Mutual Insurance Co. v. Jones, supra*. This requirement is consistent with the legislative intent because if the previous disability had not been manifest, the employer would have had no reason to discriminate against the handicapped person in hiring or firing.

11. The Director agrees with this conclusion:

We readily concede that the medical evidence in this case establishes—as does common experience—that it is highly improbable that the claimant would have sustained so serious an injury as a result of her employment accident (a mere fall to the floor of an elevator, caused by apparently no more than a descent only slightly accelerated and a stop only slightly more sudden than usual), but for the pre-existing frailty of her back.

cases. *See Atlantic & Gulf Stevedores, Inc. v. Director, Office Workers' Compensation Programs, supra; Nacirema Operating Co. v. Benefits Review Board, supra; Pittston Stevedoring Corp. v. Hughes,* 198 F.Supp. 657 (E.D.N.Y.1961); *Vandever v. Voris,* 147 F.Supp. 447 (S.D.Tex.1956).

In summary, we hold that the requirements of new § 8(f) have been satisfied in this particular case. Accordingly, we grant C & P's petition and set aside that portion of the Board's order which refused to invoke § 8(f).