607 F.2d 1385
 197 U.S.App.D.C. 200
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
COOPER ASSOCIATES, INC. t/a Raymond's Liquors and Hartford
Accident and Indemnity Company, Respondents.
COOPER ASSOCIATES, INC. t/a Raymond's Liquors and Hartford
Accident and Indemnity Company, Petitioners,
v.
Janet COOPER and Lois Cooper and Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 Nos. 78-1290, 78-1295.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 1, 1979.
Decided Sept. 28, 1979.
 
 Mary A. Sheehan, Atty., Dept. of Labor, Washington, D.C., with whom Laurie M. Streeter, Associate Sol., Washington, D.C., was on the brief, for Director, Office of Workers' Compensation Programs, United States Department of Labor, petitioner in No. 78-1290 and respondent in No. 78-1295.
 John C. Duncan, III, Washington, D.C., Cooper Associates, et al., for petitioners in No. 78-1295 and respondent in No. 78-1290.
 Leonard J. Ralston, Jr., Washington, D.C., for Janet and Lois Cooper, respondents in No. 78-1295.
 Before TAMM, LEVENTHAL and MacKINNON, Circuit Judges.
 Opinion for the Court per curiam.
 
 PER CURIAM:
 
 1
 Three questions are presented in this workmen's compensation case. First, is the family of decedent Jacob Cooper, who killed himself as a result of business pressures, entitled to workmen's compensation death benefits? Second, is the employer's insurer liable for the ten percent penalty imposed on employers who make late compensation payments? And finally, is the employer's insurer, pursuant to section 8(f) of the Longshoremen's and Harbor Workers' Compensation Act (1977), entitled to contribution toward its compensation liability from the "special fund"?[1]
 
 
 2
 * At the time of his death, Jacob Cooper (hereinafter Cooper) was an officer and director of a closely held corporation registered as Cooper Associates, Inc., t/a Raymond's Liquors. His wife was the president and sole shareholder of the corporation. In 1969, Cooper acquired for the corporation a small retail liquor store called Raymond's Liquors. For the first two years the business prospered. But beginning in 1971 it began to decline. Cooper became very depressed. He underwent psychiatric treatment and took medication. The business continued to decline and Cooper's psychological problems continued as well. In March, 1974, Cooper was found dead at Raymond's Liquor store of self-inflicted gunshot wounds.
 
 
 3
 Mrs. Cooper filed a claim for compensation death benefits on behalf of herself and her daughter Lois. 33 U.S.C. § 909, 36 D.C.Code § 501 et seq. The corporation's insurer, Hartford Accident and Indemnity Company (hereinafter insurer), opposed the claim. After a hearing, an Administrative Law Judge (ALJ) held that (1) the Cooper family was entitled to the death benefits claimed; (2) the insurer controverted the claim in a timely fashion, and therefore was not required to pay an additional ten percent penalty; and (3) the insurer was not entitled to contribution from the "special fund," and therefore had to shoulder the full cost of the compensation payments itself.
 
 
 4
 The insurer appealed to the Benefits Review Board for review of the ALJ's first and third findings. The Director of the Office of Workers' Compensation Programs, United States Department of Labor (Director) appealed with respect to the second finding. The Board affirmed the ALJ's conclusion that the family was entitled to death benefits. But it reversed the ALJ and imposed the ten percent penalty. And the Board also reversed the ALJ on the "special fund" question, holding that the insurer is entitled to contribution under section 8(f).
 
 
 5
 Both the insurer and the Director petition for review of the Benefits Review Board decision. The insurer argues that the Cooper family is not entitled to death benefits, and that even if they are entitled, the Board erred when it imposed the ten percent penalty. The Director contends that the insurer has no right to contribution from the "special fund."
 
 II
 
 6
 1. The insurer argues that the Cooper family is not entitled to receive death benefits for three reasons. First Cooper was not an "employee," and therefore was not covered by the Compensation Act.[2] Second, his death did not arise out of and in the course of his employment.[3] And finally, Cooper's suicide was "intentional" and therefore not compensable.[4] The ALJ and the Benefits Review Board considered each of these contentions, but held that (1) Cooper was an "employee," (2) his death was work-related, and (3) his suicide was not "intentional."[5] There is ample evidence in the record to support the ALJ's and the Board's conclusions,[6] and we affirm on the basis of their opinions.
 
 
 7
 2. An employer must pay a ten percent penalty on all late compensation payments unless he controverted claimant's right to compensation "(within) fourtee(n) day(s) after he (employer) ha(d) knowledge of the alleged injury or death . . . ." 33 U.S.C. § 914(d), (e) (1977). In the instant case, the employer knew of Cooper's death on March 25, 1974, but the insurer did not controvert the family's right to compensation until March 12, 1975, almost one year later. Initially therefore, the ALJ ordered the insurer to "pay a ten percent penalty on all installments of compensation not paid when due. . . ."[7] On reconsideration, however, the ALJ reversed himself because the "notice . . . of controversion was filed within fourteen days subsequent to receipt by the Carrier (insurer) of notice that Jacob Cooper's death was reported to have occurred in the course of his employment."[8]
 
 
 8
 The Benefits Review Board reversed. First, it pointed out that
 
 
 9
 (u)nder the Act, the fourteen day period within which notice of controversion must be filed begins on the date the Employer first has Knowledge of the injury or death, not the day of receipt of Notice that the death was reported to have occurred In the course of employment.[9]
 
 
 10
 Second, the Board stated that under section 35 of the Compensation Act, 33 U.S.C. § 935 (1977), "notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier (insurer) . . . ."[10] Accordingly, the Board rejected the ALJ's analysis, which had focused on the date at which the insurer became aware that the death allegedly occurred in the course of employment. Since the claim was not controverted within fourteen days of when the employer learned of the death, the Board held that the section 14(e) penalty "must be awarded."[11]
 
 
 11
 The insurer argues that the Board's decision should be reversed for three reasons. As a threshold matter, the insurer contends that the Director lacked standing to appeal the section 14(e) issue to the Benefits Review Board. This argument is wholly without merit. The Board's regulations provide that an appeal may be taken by the "Secretary or his designee."[12] The Director clearly falls within this category. Moreover, the Board has expressly stated:
 
 
 12
 the Section 14(e) issue is a substantial legal issue which affects the proper administration of the Act. The determination of whether or not to access the penalty under a particular set of circumstances impacts the Act's underlying policy of encouraging voluntary payment of compensation to the injured employees. Therefore, this issue is properly raised on appeal by the Director.
 
 
 13
 Berger v. Cork 'n' Bottle, 4 BRBS 339, 341 (1976).
 
 
 14
 The insurer also asserts that the section 14(e) issue was waived by both the family and the Director because neither contested the insurer's motion for reconsideration before the ALJ. We disagree. The Board's regulations do not require a response to request for reconsideration,[13] and traditionally such responses are inappropriate.[14] The failure to contest a motion under those circumstances is not a waiver. In addition, it is well established that the "right to additional compensation (under section 14(e)) cannot be waived."[15] In fact, the Board has held that it can consider whether the section 14(e) penalty should be imposed even if the issue is "raised for the first time on appeal."[16] Accordingly, there was no waiver here.
 
 
 15
 Finally, the insurer argues that the Board erred in imposing the penalty. The insurer's contention has three strands. First, the insurer asserts that the Board "fail(ed) to specifically address Judge Edward's findings that the circumstances presented were such as to excuse the employer's failure to file a timely notice of controversion. . . ."[17] The Fourth Circuit recently observed that the section 14(e) "penalty is mandatory unless nonpayment (or the failure to controvert the claim in a timely manner) is due to conditions beyond the employer's control." Newport News Shipbuilding and Dry Dock Co. v. Graham, 573 F.2d 167, 171 (4th Cir. 1978). If the ALJ had found that the insurer's failure to controvert was due to circumstances beyond its control, therefore, the insurer's argument would have some force. But the ALJ never made such a finding. Instead, he stated that the insurer acted "in good faith" and that it would not be "in the interest of justice" to impose the penalty.[18] Good faith is irrelevant to section 14(e), so the Board had no obligation to specifically address the ALJ's finding on that point.
 
 
 16
 Second, the insurer asserts that it would be unfair to impute the employer's knowledge to the insurer in this case. While normally the employer's interest would converge with those of its insurer, in this case the employer (Mrs. Cooper) would benefit from the imposition of the section 14(e) penalty. This argument is reasonable, and if it were necessary to the outcome of this case we would seriously consider making an exception to the statutory rule that an employer's knowledge is always imputed to his insurer.[19] We need not make that determination here, however. The insurer concedes that it was informed of Cooper's death three days after the suicide.[20] Since the insurer did not contest the claim until almost a year after it had Actual knowledge of Cooper's death, it is irrelevant whether the employer's knowledge is imputed to the insurer.
 
 
 17
 Third, the insurer suggests that it would be unfair to impose the penalty because "there was a substantial and serious question as to the circumstances surrounding Mr. Cooper's death . . . and its possible attribution to his employment."[21] This argument is a reiteration of the ALJ's assertion that the fourteen day period should run from the date at which the employer/insurer learned that the death was work-related, rather than the date when the employer learned of the death. Neither the ALJ nor the insurer has cited any authority for this proposition, and it is contradicted by the explicit language of the statute. 33 U.S.C. § 914(b) (1977).[22] We agree with the Board that the fourteen day period begins to run on the day when the employer learns of the death.
 
 
 18
 In short, since the insurer did not controvert the claim within fourteen days of when it had actual knowledge of Cooper's death, we hold that the Board properly imposed the penalty under section 14(e).
 
 
 19
 3. Section 8(f) of the Workers' Compensation Act, 33 U.S.C. § 908(f) (1977), provides that when the consequences of an employee's work-related injury are exacerbated because of that employee's pre-existing permanent partial disability, the employer's compensation liability is limited. The employer is responsible for compensation payments for only 104 weeks; thereafter a "special fund," created pursuant to section 44 of the Act, 33 U.S.C. § 944 (1977), is liable for the payments.[23] The final issue in this case is whether Cooper's suicide as a result of his depression over business failures qualifies his employer/insurer for the limited liability provisions of section 8(f).
 
 
 20
 The ALJ held that the insurer was not entitled to contribution from the special fund. He noted that section 8(f) does not apply unless the employee suffered two injuries, and he found only one continuing injury here.[24] The Benefits Review Board reversed. It stated:
 
 
 21
 (U)nder C & P Telephone (Company v. Director, Office of Workers' Compensation Programs (184 U.S.App.D.C. 18), 564 F.2d 503 (D.C.Cir. 1977)) the holding that Section 8(f) is inapplicable is incorrect. The Court in that case concluded that a work-related aggravation of a pre-existing condition may constitute a second injury for the purposes of Section 8(f). The overwhelming exacerbation of the decedent's pre-existing mental condition which the administrative law judge found resulted in the decedent's demise constituted sufficient injury to make applicable Section 8(f). See also Brannon v. Potomac Electric Power Co., 6 BRBS 527 . . . (Aug. 26, 1977).[25]
 
 
 22
 In effect, the Board held that each day Cooper went to work constituted a discrete, identifiable injury.
 
 
 23
 We are not persuaded by the Board's rather metaphysical analysis. It is apparent from the record that "the suicide resulted from a single injury or disability, namely, distress over the continuing failure of the corporate business enterprise. . . ."[26] The two cases cited by the Board are distinguishable. In C & P Telephone, supra, the claimant had a pre-existing back problem. As a result of an elevator accident on the job, her back problem was aggravated. There was never any question that the claimant had a pre-existing disability (the back problem) and a second injury (the elevator accident). The only issue was whether section 8(f) applies when the second injury aggravates the pre-existing disability. The court held that section 8(f) applies when a second injury aggravates an existing disability, but that holding does not dispose of this case in which the question is whether there was a second injury at all.
 
 
 24
 Brannon, supra, which we decide today,[27] is also distinguishable. In Brannon, an employee of a power company suffered a severe electric shock while at work. This left him with an extreme fear of electricity. His doctors testified, and the administrative decisions found, that his subsequent exposure to electricity constituted an additional trauma that aggravated his mental condition and led to his suicide. We upheld the Board's determination that since the decedent had a pre-existing disability (as a result of the accident) that was aggravated by a second injury (exposure to electronically energized equipment), section 8(f) was applicable. The second injury consisted not of the mere going to work, which was projected as feasible without exposure to energized equipment, but the additional factor of subsequent exposure to energized equipment. There was thus a discrete second injury and that is the critical factor lacking in Cooper's case.
 
 
 25
 The record here establishes that Cooper's suicide was the result of his depression over his continuing business failure. C & P Telephone and Brannon are distinguishable because in each of those cases it was conceded that there were two separate injuries. The Board erred, therefore, when it held that section 8(f) was applicable here because it was applicable in those cases. Accordingly, we reverse the Board and hold that the insurer is not entitled to the limited liability provisions of section 8(f).
 
 III
 
 26
 In summary, we affirm the Board's determination that Cooper's family is entitled to compensation benefits, and that the insurer is liable for the ten percent penalty under section 14(e). We reverse the Board's conclusion that the insurer is entitled to contribution from the "special fund," however; since there was only one continuing injury in this case, the insurer must shoulder the entire cost of Cooper's family's claim.
 
 
 27
 Judgment accordingly.
 
 
 
 [1]
 36 D.C.Code § 501 (1973) provides that the provisions of 33 U.S.C. § 901 et seq. "shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia."
 
 
 [2]
 Death benefits are only payable to the family of an "employee." E. g., 36 D.C.Code § 501; 33 U.S.C. § 909
 
 
 [3]
 33 U.S.C. § 902(2) (1977). In O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 506-07, 71 S.Ct. 470, 471-72, 95 L.Ed. 483 (1951) the Court stated:
 The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. . . . Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.
 
 
 [4]
 33 U.S.C. § 903(b) (1977) ("No compensation shall be payable if the injury was occasioned solely by the . . . willful intention of the employee to injure or kill himself . . . .")
 
 
 [5]
 App. 98-101 (ALJ's Decision and Order); App. 115-20 (Benefits Review Board Decision)
 
 
 [6]
 Banks v. Chicago Grain Trimmers Ass'n, Inc., 390 U.S. 459, 467, 88 S.Ct. 1140, 1145, 20 L.Ed.2d 30 (1968) ("The Deputy Commissioner's finding . . . that there was a causal connection between the work-connected injury suffered by the petitioner's husband . . . and his fall at home some two hours later . . . must be affirmed if supported by substantial evidence on the record considered as a whole."); O'Keeffe v. Smith Associates, 380 U.S. 359, 363, 85 S.Ct. 1012, 1015, 13 L.Ed.2d 895 (1965) ("While this Court may not have reached the same conclusion as the Deputy Commissioner, it cannot be said that his holding that the decedent's death . . . arose out of and in the course of his employment is irrational or without substantial evidence on the record as a whole."); O'Leary v. Brown-Pacific-Maxon, supra, 340 U.S. at 508, 71 S.Ct. at 472 ("the findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole.")
 
 
 [7]
 App. 105
 
 
 [8]
 App. 107 (ALJ's Supplemental Decision and Order)
 
 
 [9]
 App. 123 (emphasis added)
 
 
 [10]
 App. 123-24
 
 
 [11]
 Id. 124
 
 
 [12]
 "Any party in interest adversely affected or aggrieved by a decision or order issued pursuant to one of the Acts may appeal such decision or order to the Board. . . ." 20 C.F.R. § 802.201(a). " 'Party' or 'Party in interest' means the Secretary or his designee and any person or business entity aggrieved or directly affected by the decision or order from which an appeal to the Board is taken." 20 C.F.R. § 801.2(a)(10)
 
 
 [13]
 20 C.F.R. §§ 802.407-802.409
 
 
 [14]
 See, e. g., Fed.R.App.P. 40(a) ("No answer to a petition for rehearing will be received unless requested by the court . . . .")
 
 
 [15]
 Harris v. Marine Terminals Corp., 8 BRBS 712, 714 (1978)
 
 
 [16]
 Laber v. Sun Shipbuilding and Dry Dock Co., 7 BRBS 956, 957 (1978); Reed v. Sun Shipbuilding and Dry Dock Co., 4 BRBS 130, 134 (1976)
 
 
 [17]
 Insurer's Br. 50
 
 
 [18]
 App. 107-08 (ALJ's Supplemental Decision and Order)
 
 
 [19]
 33 U.S.C. § 935 (1977)
 
 
 [20]
 "As the record reflects, Jacob Cooper committed suicide on March 25, 1974. (J.A. 97) Three days later the decedent's nephew, attorney Steven M. Cooper, wrote to Hartford Accident and Indemnity Company, the workmen's compensation carrier for Cooper Associates, (and) advised that Jacob Cooper had died. . . ." Insurer's Br. 45
 
 
 [21]
 Insurer's Br. 51
 
 
 [22]
 See O'Leary v. Southeast Stevedore Co., 3 BRBS 419 (1976)
 
 
 [23]
 The purpose of § 8(f) is explained in Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor v. PEPCO, 197 U.S.App.D.C. ---, 607 F.2d 1378 (D.C.Cir. 1979), which is decided today, and discussed Infra page --- of 197 U.S.App.D.C., page 1391 of 607 F.2d
 
 
 [24]
 App. 104
 
 
 [25]
 App. 121
 
 
 [26]
 App. 102
 
 
 [27]
 Director v. PEPCO, supra