625 F.2d 317
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
TODD SHIPYARDS CORPORATION and the Travelers Insurance
Company, Respondents.
 No. 78-1891.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 6, 1980.
Decided Aug. 13, 1980.
 
 Gilbert T. Renaut, Washington, D. C., argued, for petitioner; Mary A. Sheehan, Dept. of Labor, Washington, D. C., on brief.
 Robert H. Madden, Seattle, Wash., for respondents.
 
 
 1
 On Petition for Review of an Order of the Benefits Review Board.
 
 
 2
 Before WRIGHT and SKOPIL, Circuit Judges, and CURTIS,* District judge.
 
 CURTIS, District Judge:
 
 3
 The Director of the Office of Workers' Compensation Programs under the Longshoremen's and Harbor Workers' Compensation Act,[1] 33 U.S.C. § 901,[2] et seq., as amended 1972, acting pursuant to section 921, petitions this court for a review of a decision of the Benefits Review Board affirming a ruling of the Administrative Law Judge awarding compensation to the claimant, William Ashley. This ruling also limited the liability of the employer, Todd Shipyards Corporation, and its insurer, Travelers Insurance Company, respondents herein, to compensation for a period of 104 weeks in accordance with section 908(f) (§ 8(f) of the Act).[3]
 
 
 4
 The facts are not in dispute and the sole issue is the applicability of section 908(f) to the instant factual situation. Holding that the respondents come within the provisions of section 908(f), we affirm.
 
 FACTS
 
 5
 Claimant had been employed as a welder since 1941, having worked for numerous employers over the years. Although he had been suffering difficulties with his breathing while performing his welding duties, claimant's symptoms intensified severely in late 1971 while employed by Pacific Car and Foundry when he was exposed to isocyanate, an irritating respiratory sensitizer. This exposure exacerbated claimant's respiratory condition to such an extent that he was forced to terminate his employment with Pacific Car and Foundry.
 
 
 6
 Claimant was thereafter unemployed and unemployable, due to his pulmonary condition, for the next two and one-half years. He had been undergoing treatment during this period for his condition when in 1974 his physician advised him that he could return to work if he worked in clean air and avoided smoke and fumes which might "retrigger" his pulmonary illness.
 
 
 7
 On March 19, 1974, claimant was hired by Todd Shipyards and stated in his work application that he had experienced "shortness of breath, 10-71 to 1-74." He had also discussed with the welding supervisor his recent illness and consequent restriction to work in open, well-ventilated environments. Todd attempted to accommodate him and he was given preference for assignments in open areas whenever such work was available. In the fall of 1975, however, he was assigned to do welding below deck on a barge. Exposure to fumes and smoke in this enclosed environment had such an adverse effect on claimant's respiratory condition that he was forced to discontinue working on February 23, 1976.
 
 THE LAW
 
 8
 Section 908(f) provides generally that when an employee with an existing permanent partial disability receives a subsequent injury, his employer is only liable for that proportion of the total disability caused by the last injury. The employer's liability for compensation payments may be limited to a period of 104 weeks at which time compensation payments are paid out of a special fund established under section 944.
 
 
 9
 The congressional purpose underlying section 908(f) was stated by the court in Maryland Shipbuilding and Drydock Co. v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 618 F.2d 1082 (4th Cir. 1980):
 
 
 10
 Section (908(f)) is intended to encourage the employment of handicapped workers, by protecting an employer who hires a handicapped worker from paying total disability compensation for an injury that would have been a partial disability but for pre-existing conditions. (Citation omitted.) The ultimate purpose, of course, is to protect a handicapped applicant or employee from loss of employment. (Citations omitted.) A liberal application of this section is, therefore, in keeping with Congressional design.[4]
 
 
 11
 In C & P Tel. Co. v. Dir., Office of Wkrs.' Comp. Prog., 564 F.2d 503, 514 (D.C. Cir. 1977), the court developed a three-part test for the application of this section: (1) the employee must have had a preexisting, permanent partial disability; (2) this condition must have been manifest to the employer; and (3) the preexisting partial disability must have contributed to the seriousness of the employee's second injury. Accord, Director, Office of Workers' Comp. v. Potomac Elec., 607 F.2d 1378, 1382 (D.C. Cir. 1979).
 
 DIRECTOR'S CONTENTION
 
 12
 Although the Director concedes that Ashley had a "preexisting permanent partial disability" and that it was "manifest" at the time of his employment by Todd, the Director contends that claimant's last exposure to fumes and smoke fails to satisfy the requirements of section 908(f) since the last exposure constituted an aggravation of the preexisting disability rather than an injury. The Director further argues that although claimant's lung disease was not the sole result of his last employment, the claimant's present disability is due solely to the aggravation of his condition and since section 908(f) excludes coverage of a disability "due solely to (subsequent) injury," section 908(f) is inapplicable.
 
 DISCUSSION
 
 13
 Although this appears to be a case of first impression in this circuit, the Director's contention has been rejected in both the Third and the District of Columbia Circuits.
 
 
 14
 In Director, Office of Wkrs.' Comp. v. Sun Shipbuilding, 600 F.2d 440 (3d Cir. 1979), the Director challenged the application of section 908(f) in an "aggravation case." The claimant injured his back while working for Sun Shipbuilding. After surgery he retained a degree of permanent partial disability which was manifest to his employer. He was thereafter assigned to lighter work, but did not receive compensation for permanent partial disability. He was, however, later assigned to heavier work and sustained an aggravation of his back condition and became permanently disabled. The Administrative Law Judge found that Sun Shipbuilding's liability was limited under section 908(f). Said the court:
 
 
 15
 It has been, and continues to be, the Director's basic position that (section 908(f)) was never intended to apply when the second injury is an aggravation of the first. We have rejected that interpretation of (section 908(f)). (Citations omitted.)
 
 
 16
 Id. at 442. By way of further explanation of its ruling, the court said:
 
 
 17
 No doubt maximum safety in the workplace would be achieved by screening out from employment those workers with a potential for the aggravation of preexisting disabilities. But Congress, when it enacted (section 908(f)), struck a different balance. It encouraged employers to expose themselves to some liability for such aggravations by limiting this liability to one hundred four weeks of permanent disability, while providing the previously disabled with coverage under the special fund. (Footnote omitted.)
 
 
 18
 Id.
 
 
 19
 In C & P Tel. Co. the Director again made the same "aggravation" argument which the court answered by saying:
 
 
 20
 The Director further argues that (section 908(f)) can never be applied in an aggravation case, contending that the subsection applies only when two unrelated injuries combine. The legislative purpose, however, would be frustrated by such an artificial distinction. Properly interpreted, (section 908(f)) must apply regardless of whether the second injury is of a nature unrelated to that of a previous disability.
 
 564 F.2d at 514.[5]
 
 21
 In Potomac Elec. the court had before it a claimant who had been injured by severe electrical shock which had created lasting psychological problems. A subsequent exposure to energized equipment while working for the same employer led to his eventual suicide. The court held that section 908(f) did apply in such a situation where a preexisting disability was aggravated by a subsequent injury. 607 F.2d at 1385.
 
 
 22
 In Cordero v. Triple A Mach. Shop, 580 F.2d 1331 (9th Cir. 1978), cert. denied, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979), we considered the applicability of section 908(f) to a fact pattern similar, yet with significant differences, to the one presented here. Claimant was a welder who had worked in that capacity for over thirty years. He had developed a chronic cough and shortness of breath. He had worked sporadically for Triple A performing welding on ships. In August of 1972, claimant was laid off for lack of work. He was again hired by Triple A on October 17, 1972, but was unable to work after October 19, 1972 due to his lung condition.
 
 
 23
 The Administrative Law Judge found the claimant was permanently and totally disabled as a result of a pulmonary impairment which had been, at least, aggravated by his employment as a welder with Triple A. The Administrative Law Judge found that the claimant was entitled to benefits under the Longshoremen's and Harbor Workers' Compensation Act. He further found that Triple A did not meet the requirements of the section 908(f) limitation of liability. This decision was affirmed by the Benefits Review Board.
 
 
 24
 On appeal to this court, we found that section 908(f) did not apply since it did "not come into play until certain specific prerequisites (were) met." Id. at 1337. Although we did not elaborate on which "specific prerequisites" were lacking, we did point out that Triple A was unaware of claimant's chest problem and that this condition did not constitute "an existing permanent partial disability" within the requirements of section 908(f) when the aggravation occurred which rendered claimant permanently totally disabled. Id. at 1338-39.
 
 
 25
 The Cordero case is clearly distinguishable from the case now before us, since at least two of the prerequisites mentioned in C & P Tel. Co., 564 F.2d at 514, are missing in Cordero yet present in the instant appeal, to wit: a preexisting permanent partial disability and a condition which was manifest to the employer at the time of the employment. We find additionally that Todd meets the third C & P Tel. Co. test requirement, namely that claimant's preexisting partial disability contributed to the seriousness of his second injury. 564 F.2d at 514.
 
 
 26
 APPLICABILITY OF SECTION 908(f) TO NON-TRAUMATIC OCCUPATIONAL DISEASES
 
 
 27
 The Director seeks to distinguish those cases in which his position has been rejected on the ground that they dealt with traumatic injuries, whereas the injury in the instant case is a non-traumatic occupational disease. This distinction, however, has slight relevance here, since he concludes that claimant does meet the disability standard under application of section 908(c) (21)[6] and concedes that the "existing permanent partial disability" requirement of section 908(f) is met.
 
 
 28
 In any event, there seems to be no justification for the distinction since the term "injury" as used in section 908(f) "means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury . . . ."[7]
 
 
 29
 The contention that a "disease" does not qualify as an "injury" within the meaning of section 908(f) was rejected by the District of Columbia Circuit as "too narrow" an interpretation. C & P Tel. Co., 564 F.2d at 513. The court added "the term 'disability' in (section 908(f)) can be an economic disability under (section 908(c)(21)) or one of the scheduled losses specified in (section 908(c)(1)-(20)), but it is not limited to those cases alone." Id.
 
 
 30
 Applying the "liberal application" of section 908(f) as mandated in Maryland Shipbuilding,[8] the definition of "injury" found in section 902(2), which includes occupational diseases within its scope, is clearly the proper definition to use. Furthermore, this definition of "injury" found in section 902(2) should be read with the definition of "disability" contained in section 902(10), i. e. " 'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury . . . ." Thus the Administrative Law Judge's finding that claimant was suffering from a preexisting permanent partial disability when hired by Todd and that this disability was aggravated by a subsequent "injury" should not be disturbed.
 
 
 31
 We conclude therefore that section 908(f) was correctly applied by the Review Board to the facts before us where a preexisting permanent partial disability in the form of an occupational disease which is manifest to the employer at the time of employment is aggravated by a subsequent injury.
 
 
 32
 We affirm the decision of the Review Board.
 
 
 
 *
 Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Hereinafter cited as "the Act."
 
 
 [2]
 All sections are under 33 U.S.C. unless otherwise indicated
 
 
 [3]
 Section 908(f) provides:
 (f) Injury increasing disability:
 (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. . . .
 In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide in addition to compensation under paragraphs (b) (dealing with temporary total disability) and (e) (dealing with temporary partial disability) of this section, compensation for one hundred and four weeks only.
 
 
 [4]
 Accord, John T. Clark & Son of Maryland, Inc. v. Benefits Review Bd., United States Dep't of Labor, 621 F.2d 93, 95 n.4 (4th Cir. 1980)
 
 
 [5]
 See also Hastings v. Earth Satellite Corp., 628 F.2d 856 (D.C. Cir., 1980)
 
 
 [6]
 33 U.S.C. § 908(c)(21) provides:
 Other cases: In all cases in this class of disability the compensation shall be 66 2/3 per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy commissioner on his own motion or upon application of any party in interest.
 
 
 [7]
 33 U.S.C. § 902(2)
 
 
 [8]
 See text accompanying n. 4 supra