**BECHTEL ASSOCIATES, P.C. and Lumbermens Mutual Casualty Co., Petitioners,**

v.

**Sally T. SWEENEY and Director, Office of Workers' Compensation Programs, DOL, Respondents.**

No. 86–1661.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 19, 1987.

Decided Dec. 4, 1987.

Petition for Review of an Order of the Benefits Review Board.

Kevin J. O'Connell, for petitioners.

Janet R. Dunlop, Atty., Dept. of Labor, with whom Donald S. Shire, Associate Sol., Dept. of Labor, and J. Michael O'Neill, Washington, D.C., Counsel for Longshore were on the brief, for respondent, Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor. Marianne Demetral Smith, Atty., Office of the Sol., Dept. of Labor, Washington, D.C., also entered an appearance for respondent, Dept. of Labor.

Marc Fiedler, with whom Roger C. Johnson and Joseph H. Koonz, Washington, D.C., were on the brief for respondent, Sweeney.

Before WALD, Chief Judge, MIKVA and FRIEDMAN,[*] Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

John A. Sweeney (Sweeney), worked as a tunnel inspector for petitioner Bechtel Associates, P.C. (Bechtel),[1] from 1965 until a few months before he died of gastric carcinoma on June 8, 1980. His widow, Sally T. Sweeney (claimant), filed a claim under the Longshore and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 901 *et seq.*, made applicable to the District of Columbia by the 1928 D.C. Workmen's Compensation Act, 36 D.C.Code § 501, *et seq.*[2] His wife sought permanent total disability benefits, and her widow's death benefits, based upon Sweeney's pulmonary disease and stomach cancer, both of which she alleged arose out of his employment with Bechtel. The Administrative Law Judge (ALJ) of the United States Department of Labor first rejected Bechtel's contention that claimant had failed to give timely notice and to file a timely claim under § 12(a) and § 13(a) of the Act. He then concluded that while Sweeney's stomach cancer was not work-related, it had combined with Sweeney's lung condition which was work related to create a compensable permanent total disability under the Act. Bechtel was required to pay claimant full compensation for Sweeney's permanent total disability pursuant to § 8(a) of the Act as well as death benefits pursuant to § 9. Finally, the ALJ denied Bechtel's request for relief under § 8(f) of the Act, which provides for the mitigation of an employer's compensation liability under certain conditions. *See* 33 U.S.C. § 908(f). The Benefits Review Board (the Board) affirmed the ALJ's findings. Bechtel now petitions this court for review of the Board's decision. We affirm the Board.

## I. BACKGROUND

John A. Sweeney was first employed by Bechtel from August 1965 until August 1967, as a chief tunnel inspector for a project in Colorado. Between May 1968 and June 1971, he also worked for Bechtel, supervising tunnel construction on a project near Modesto, California. In July 1968, Sweeney was hospitalized for several days with pneumonia of the left lung and pleuritis secondary to pneumonia. By October 1969, however, an examination revealed that both of Sweeney's lungs had cleared. *See* ALJ Order at 4.

In 1971 Sweeney was transferred by Bechtel to Washington, D.C., where he worked as a senior field engineer and chief tunnel inspector on the company's Metrorail Project until 1980. Most of Sweeney's work was underground near excavation activity involving drilling machines, explosives and other pulverizing devices which produced a continually dusty atmosphere. *See* Transcript of ALJ Hearing at 64–65. On January 3, 1972, Sweeney sought treat-

---

[*] Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

1. Bechtel Associates, P.C. and its liability insurance carrier Lumbermens Mutual Casualty Company will be referred to jointly as "Bechtel."

2. The 1928 D.C. Act has been superseded by the District of Columbia Workers' Compensation Act of 1979, 36 D.C.Code Ann. §§ 36–301 to –345 (1981 & Supp.1987), which became effective in July 1982. Because the claims in this case arose out of injuries incurred prior to July 1982, they are governed by prior law. *See, e.g., Crum v. General Adjustment Bureau,* 738 F.2d 474, 475 n. 2 (D.C.Cir.1984).

ment from Dr. Nelson G. Goodman for a cough that had lasted more than a month. At that time, Dr. Goodman noticed rales—which are abnormal respiratory sounds heard through a stethoscope—in the base of Sweeney's left lung. Dr. Goodman believed that Sweeney had a clearing pneumonia. Sweeney's chest x-ray, however, revealed no abnormalities. On January 4, 1972, Dr. Goodman performed a complete physical examination of Sweeney and found no abnormalities of the lung. Dr. Goodman noted in Sweeney's medical history at that time that Sweeney reported he was sometimes short of breath; that Sweeney had had pneumonia and pleurisy in 1968; and that Sweeney had been exposed to rock dust and powder smoke during 30 years of working in tunnel construction. Based on the medical examination, Dr. Goodman listed various diagnostic "impressions," one of which was the possibility of some early fibrotic lung disease, such as silicosis. Dr. Goodman thought that such a condition "might have been from scarring associated with the inhalation of dust particles through the years." Dr. Goodman noted "silicosis" followed by a question mark on Sweeney's medical chart. ALJ Order at 4–5.

Dr. Goodman did not see Sweeney again for a major complaint until July 18, 1973, when Sweeney complained of continuing shortness of breath. Dr. Goodman noted some noises in the left lung base, but a chest x-ray proved to be normal. Dr. Goodman again noted "silicosis" followed by a question mark. Dr. Goodman saw Sweeney on several occasions in April 1974 due to complaints of chest pain. On some visits, Dr. Goodman noted the presence of rales; on others, he reported the lungs as clear. A breathing test conducted on April 14, 1974, suggested to Dr. Goodman the possibility of either obstructive or destructive lung disease, but when questioned at his deposition Dr. Goodman could not be sure whether he had discussed these results with Sweeney. *See id.* at 5.

Dr. Goodman's partner, Dr. Leonard Appel, next examined Sweeney on October 17, 1974, for a sore throat and an expectorant cough. *See* Deposition of Goodman at 24–

26. Dr. Appel diagnosed bronchitis and possible silicosis and prescribed theophylline, an expectorant. Dr. Goodman performed a follow-up examination on October 30, 1974, and at this time "seemed more confident that he had some pulmonary fibrosis." He informed Sweeney that some pulmonary disease was present but could not recall whether he discussed the cause of the disease with him at that time. Sweeney was next examined on May 25, 1976, when his condition was found to have changed little, if at all; Dr. Goodman concluded that he had a stable pneumoconiosis, probably due to dust exposure. Sweeney was not treated again until 1978, when he was seen by Dr. Appel and diagnosed as having bronchitis and pleuritis. A chest x-ray showed no significant change from previous x-rays. *See id.* at 30.

In December 1979, Sweeney saw Dr. Appel with regard to a stomach complaint. On that occasion, Dr. Appel described Sweeney's lungs as clear. On January 12, 1980, Sweeney revisited Dr. Appel as a follow-up on his stomach condition. At that examination Dr. Appel heard a few rales in Sweeney's left lung. Dr. Appel referred Sweeney to Dr. Barry Epstein, a gastroenterologist, for further analysis of his stomach problem. Sweeney worked for Bechtel until February 6, 1980, a day before he was diagnosed as having stomach cancer. On February 9, he was admitted to the hospital for gastric surgery and remained there until February 21, 1980. Because the surgery revealed extensive cancer in the stomach and the regional lymph nodes, only a palliative resection of the stomach was performed. *See id.* at 31–35. On March 20, 1980, Dr. Goodman wrote Bechtel recommending that Sweeney retire from work:

> Mr. John Sweeney suffers from a chronic lung condition probably caused by exposure to toxic substances associated with his work. He has recently developed stomach cancer. This condition has caused a general weakness which coupled with his lung condition makes him unable to work.

**1032**

Sweeney died on June 8, 1980, from gastric carcinoma.

On October 6, 1980, his widow filed a claim under the Act for permanent total disability and death benefits based on Sweeney's work-related lung disease.[3] In response, Bechtel contended that her claims were barred for failure to give timely notice under § 12(a) or to file a timely claim under § 13(a) of the Act. Bechtel contended in the alternative that Sweeney's permanent disability was not fully compensable under the Act, because (1) his employment-related lung condition was at most partial and temporary, and (2) Sweeney's nonwork-related stomach cancer had occurred *subsequent* to his lung disease and thus was not a pre-existing injury that in conjunction with a later work-related condition could give rise to a fully compensable total disability. Finally, Bechtel contended that its liability was limited under § 8(f) of the Act.

Following a formal hearing held on December 15, 1982, the ALJ found that claimant's notice of injury and filing of claim were timely under § 12(a) and § 13(a) of the Act; that Sweeney's pulmonary disease was work-related and had combined with his stomach cancer, which was not employment-related, to create a compensable permanent total disability under § 8(a) of the Act; and that Bechtel was not entitled to partial relief from liability under § 8(f) of the Act. Claimant appealed the ALJ's decision to the Benefits Review Board under § 21(b)(3) of the Act, 33 U.S.C. § 921(b)(3). In an order dated October 16, 1986, the Board affirmed the ALJ's decision in all respects. This appeal followed.

## II. DECISION

### A. *Timeliness of Notice and Filing*

■ The Longshore and Harbor Workers' Compensation Act affords compensation for any "occupational disease or infection that arises naturally out of [employment]." 33 U.S.C. § 902(2). The Act also sets forth certain notice and filing require-

ments, which, if not satisfied, will bar claims for compensation. Section 12(a) of the Act provides that notice of the injury or death to be compensated must be given within "thirty days after the employee or beneficiary is aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of a relationship between the injury or death and the employment." 33 U.S.C. § 912(a). Failure to give notice, however, may be excused pursuant to § 12(d)(1), which provides that:

> Failure to give such notice shall not bar any claim under this chapter (1) *if the employer ... had knowledge of the injury or death,* (2) the deputy commissioner determines that the employer has not been prejudiced by failure to give such notice....

33 U.S.C. § 912(d)(1) (emphasis added). Section 13(a) of the Act sets forth the filing requirement:

> [T]he right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death.... The time for filing a claim shall not begin to run *until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.*

33 U.S.C. § 913(a) (emphasis added).

At the hearing before the ALJ, Bechtel contended that Sweeney knew his pulmonary condition was work-related as early as 1972 and therefore that Sweeney's failure to give notice of injury and to file a claim at that time barred the claim filed by his widow in 1980. After reviewing the medical evidence, the ALJ rejected Bechtel's contentions and found that Sweeney had no reason to believe that he had suffered a *compensable* injury prior to March 1980. The ALJ stated that "although the employee must have been aware that he suffered from work-related pulmonary disease no

---

**3.** Claimant also filed a claim seeking compensation for a permanent partial disability due to a hearing loss. The ALJ found that the claim was

untimely and thus barred under § 12(a) and § 13(a) of the Act, 33 U.S.C. §§ 912(a), 913(a). This finding was not contested on appeal.

later than 1974, he had no reason to believe that this disease would decrease his earning power until Dr. Goodman recommended that he retire in March 1980." ALJ Order at 7. The ALJ concluded that neither § 12(a) nor § 13(a) barred the claims filed by Sweeney's widow in October 1980. The Benefits Review Board upheld the ALJ.[4] *See* Board Order at 3. We affirm.

Sections 12(a) and 13(a) of the Act expressly provide that the limitation periods for notice and filing do not begin to run until the employee or beneficiary is or should be aware "of the relationship between the injury or death and the employment." This language has been interpreted by courts to mean that the limitation period begins only when the employee knows or should know that (1) his injury is causally related to his employment and (2) his injury is impairing his capacity to earn wages. *See, e.g., Marathon Oil Co. v. Lunsford,* 733 F.2d 1139, 1141–42 (5th Cir. 1984); *Todd Shipyards Corp. v. Allan,* 666 F.2d 399, 401–02 (9th Cir.), *cert. denied,* 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 60 (1982); *see also Stancil v. Massey,* 436 F.2d 274, 276 (D.C.Cir.1970). Thus, petitioners' allegation that Sweeney was aware since the early seventies that his lung condition was work-related is not enough to start the running of the notice and filing limitation periods. Nor is it sufficient for the purposes of § 12(a) and § 13(a) that Sweeney may have suspected that his lung problems would be aggravated by continuing to work in the tunnels. For the statutory notice and filing limitation periods to begin, Sweeney had to be aware that his lung condition was impairing his capacity to earn wages.

The ALJ, as the trier of fact, is responsible for weighing and drawing inferences from the evidence presented. In drawing such inferences, the ALJ "is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." *Cardillo v. Liberty Mutual Ins. Co.,* 330 U.S. 469, 478, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947). Thus, the ALJ's factual findings under review by the Board are "conclusive" if they are supported by substantial evidence. *See* 33 U.S.C. § 921(b)(3). By the same token, this court's review of the Board's decision to uphold or reverse the ALJ "is limited to a review for errors of law and for findings of fact not supported by substantial evidence in the record considered as a whole." *Geddes v. Benefits Review Bd.,* 735 F.2d 1412, 1415 (D.C.Cir.1984).

There is substantial evidence in the record to support the ALJ's determination that Sweeney had no reason to believe that his lung condition was having any significant effect upon his wage-earning capacity until March 1980, when his doctor recommended that he retire. The record shows that Sweeney's job as a chief tunnel inspector was not a strenuous one. *See* Transcript of ALJ Hearing at 71. Sweeney's attendance record was exemplary, and his co-workers testified that he was able to perform his duties satisfactorily. *See id.* at 107–08. In addition, Dr. Nelson Goodman, the internist who treated Sweeney for over eight years, stated in his deposition that he could not establish from the medical records whether Sweeney's lung condition deteriorated between 1972 and 1980. Sweeney's lungs were shown to be clear on and off during that period; chest x-rays taken in 1972, 1973 and 1978 were all reported within normal range. *See* Deposition of Goodman at 6, 15, 30, 48. Although Dr. Goodman mentioned to Sweeney on various occasions that his working environment might aggravate his lung condition, he never told Sweeney to stop working in the tunnels; nor did Dr. Goodman ever suggest to Sweeney that because of his lung problem he would no longer be able to do his job. *See id.* at 26–27. We conclude

---

**4.** In its decision affirming the ALJ, the Board explicitly addressed the ALJ's § 13(a) determination regarding the timeliness of claimant's filing but not the ALJ's § 12(a) determination as to the timeliness of notice. However, we see no reason not to address the § 12(a) question at the same time that we address the § 13(a) question, given the similarity of the two provisions—the language at issue in § 12(a) is virtually identical to that at issue in § 13(a)—and given that the Board stated in its order that it was affirming the ALJ "in all respects."

that these evidentiary facts, taken together, form a substantial basis for the ALJ's finding that March 20, 1980, the day Dr. Goodman recommended that Sweeney retire, is the relevant date for determining whether the notice and filing requirements of § 12(a) and § 13(a) were satisfied: until that time, Sweeney had no reason to believe that his wage-earning capacity was adversely affected by his pulmonary condition.

Section 13(a)'s one-year limitation period for filing thus presents no bar, since Sweeney's widow filed her claim in October 1980, well within one year of the date that Sweeney became aware that his lung condition had diminished his wage-earning capacity. Nor is § 12(a)'s 30–day notice requirement a bar to the disability claim. Because § 12(d)(1) excuses the employee's failure to give notice if the employer has knowledge of the employee's injury, it is irrelevant that claimant did not herself give notice within the stipulated 30–day period. Bechtel had ample knowledge of Sweeney's disability from Dr. Goodman's letter of March 20, 1980 setting forth Sweeney's condition. Because Bechtel knew about Sweeney's disability and there was no showing of prejudice to Bechtel by claimant's failure to give any additional 30–day notice, the ALJ properly concluded that her claims were not barred.

### B. Claimant's Entitlement to Benefits Under § 8(a) and § 9 of the Act

■ It is well-established under the Act that an employment-related injury need not be the primary cause of an employee's total disability in order for a claimant to receive total disability compensation. If a work-related injury aggravates, exacerbates, accelerates, contributes to or combines with a *pre-existing* infirmity, disease or underlying condition, then the entire resulting disability may be a compensable injury under the Act. *See, e.g., Crum v. General Adjustment Bureau,* 738 F.2d 474, 478 (D.C.

Cir.1984); *Stevenson v. Linens of the Week,* 688 F.2d 93, 100 (D.C.Cir.1982); *Hensley v. Washington Metro. Area Transit Auth.,* 655 F.2d 264, 268 (D.C.Cir.1981), *cert. denied,* 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982).

Although the ALJ found that Sweeney's stomach cancer was not employment-related, he concluded that Sweeney's pulmonary disease, which was work-related, had combined with Sweeney's pre-existing stomach disease to create a compensable permanent total disability. The ALJ rejected Bechtel's contention that Sweeney's nonwork-related stomach cancer had occurred *subsequent* to his occupational lung disease and thus was not a pre-existing injury that could give rise to a fully compensable total disability. The ALJ refused to credit the fact that Sweeney's cancer was not diagnosed until February 7, 1980, as demonstrating that it had not existed long before that time. The ALJ pointed out that Dr. Epstein, the gastroenterologist who performed Sweeney's gastroscopy, had testified that he could not tell how and when Sweeney's cancer began. Moreover, the ALJ stated that Sweeney had not suffered an "injury" with regard to his lung condition until Dr. Goodman advised him to retire in March 1980. Thus, in the ALJ's words:

> [A] judgment that the injury due to a pulmonary condition existed prior to the injury due to carcinoma is sheer speculation. The injuries appear simultaneous in impact in that they caused disability at the same time. Any doubt in the matter is resolved favorably to the claimant.

ALJ Order at 12. Emphasizing that "in the uncontradicted opinion of Dr. Goodman, [Sweeney's] inability to work was due to stomach cancer 'coupled with his lung condition,'" the ALJ concluded that Sweeney suffered a compensable permanent total disability from February 7, 1980 until his death on June 8, 1980. Claimant was therefore entitled to full compensation under § 8(a)[5] and to death benefits under

---

**5.** Section 8(a) provides in relevant part:
   Permanent total disability: In case of total disability adjudged to be permanent 66⅔ per centum of the average weekly wages shall be

paid to the employee during the continuance of such total disability.... In all other cases permanent total disability shall be determined in accordance with the facts.

§ 9. The Board affirmed the ALJ's determination.

Bechtel does not dispute that Sweeney's lung condition was employment-related. The question before this court is thus whether the ALJ could properly find (1) that Bechtel had not carried its burden of proving that Sweeney's nonwork-related stomach cancer did not pre-exist his work-related pulmonary condition and (2) that Sweeney's pulmonary condition subsequently combined with the stomach cancer to create a fully compensable permanent total disability.

Section 20(a) of the Act sets forth an explicit presumption: "in the absence of *substantial evidence to the contrary*," claims for compensation are presumed to fall within the provisions of the Act. 33 U.S.C. § 920(a) (emphasis added). Moreover, the case law makes clear that the Act is to be liberally construed in favor of compensation. *See Stevenson*, 688 F.2d at 98 (quoting *Voris v. Eikel*, 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953)). Sweeney first complained of abdominal pain in 1974. *See* Deposition of Goodman at 64. Claimant argues that this abdominal pain may well have been an early symptom of gastric cancer, pre-dating the onset of his work-related lung disease. In light of that evidence, Bechtel was under an obligation to rebut the presumption that Sweeney's stomach condition was a pre-existing disability, which when combined with his work-related lung disease, produced a fully compensable permanent total disability. Bechtel, however, failed to do so. It offered no evidence as to when and how Sweeney's gastric cancer began. It did not adduce any general evidence about the typical latency period of gastric cancer to refute claimant's assertion that Sweeney's stomach disease was present as early as 1974. In short, nothing in the record establishes that Sweeney's stomach condition did *not* pre-exist or occur simultaneously with his lung disease. Given that doubts as to eligibility for compensation, including factual doubts, "are to be resolved in favor of the employee," *see, e.g., Friend v. Britton*, 220 F.2d 820, 821 (D.C.Cir.), *cert. denied*, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955), we conclude that the ALJ and the Board committed no error in finding that Sweeney's lung disease and cancer "appear[ed] simultaneous in impact in that they caused disability at the same time" and that claimant was therefore entitled to full compensation for Sweeney's permanent total disability and subsequent death.[6]

## C. *The Denial of § 8(f) Relief*

Section 8(f) of the Act limits the liability of the employer in certain situations when the consequences of an employee's work-related injury are exacerbated because of that employee's pre-existing permanent partial disability.[7] *See* 33 U.S.C. § 908(f) (1977). Section 8(f) was designed "to enhance employment prospects

---

33 U.S.C. § 908(a). Claimant sought full compensation under § 8(a) rather than compensation for temporary total disability or permanent partial disability under § 8(b) or § 8(c), respectively.

6. *See also LaPlante v. General Dynamics Corp.*, 15 B.R.B.S. 83 (1982). In *LaPlante*, the claimant was exposed to asbestos between 1959 and 1964 while working for his employer. In 1973, the claimant suffered the first of three heart attacks and underwent cardiac surgery in 1974. A few years later, he began experiencing shortness of breath and was diagnosed as having asbestosis. The ALJ found that the claimant's asbestosis had aggravated and combined with his heart condition, to render him permanently disabled. The Board affirmed, stating that:

[Given] the absence of any record evidence indicating that the nonwork-related heart condition did not pre-exist the work-related asbes-

*tosis*, we hold that employer has not introduced substantial evidence to rebut the § 20 presumption that claimant's disabling condition is work-related.

*Id.* at 86 (emphasis added).

7. Section 8(f) of the Act provides that when an employee who is already partially disabled suffers a second injury that permanently disables him, and the extent of that permanent disability is "materially and substantially greater" than it would have been but for the pre-existing disability, then the employer is generally required to provide only 104 weeks of the disability compensation. 33 U.S.C. § 908. The remaining portion of the disability compensation is paid out of a Special Fund, which is established in § 44 of the Act, 33 U.S.C. § 944, and accumulated by payments from insurance carriers and self-insurers. *See C & P Tel.*, 564 F.2d at 510.

for the handicapped by alleviating employer fears that workers' existing disabilities will lead to inordinate compensation liabilities in the event of a later accident." *Brock v. Washington Metro. Area Transit Auth.*, 796 F.2d 481, 482–83 (D.C.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987). An employer may qualify for § 8(f) relief only if: (1) the employee had a pre-existing permanent partial disability; (2) the pre-existing disability was manifest to the employer; and (3) the pre-existing disability contributed to the seriousness of the permanent total disability caused by the second, work-related injury giving rise to the employee's claim. *See Director, OWCP v. Belcher Erectors,* 770 F.2d 1220, 1222 (D.C.Cir.1985); *C & P Tel. Co. v. Director, OWCP,* 564 F.2d 503 (D.C.Cir.1977).

In the present case, Bechtel contends that it is entitled to partial relief of its compensation liability because it has satisfied all three of § 8(f)'s requirements. Specifically, Bechtel argues that as of the early seventies Sweeney had a permanent partial lung disability, which was manifest to Bechtel. Moreover, Bechtel claims that the aggravation of Sweeney's pre-existing lung disability due to his constant exposure to dust and fumes at work constituted a second employment-related injury for purposes of § 8(f). In the proceedings below, however, the ALJ held that Bechtel was not entitled to § 8(f) protection, because Sweeney's prior lung condition did not amount to a pre-existing permanent partial disability:

> The signs of [Sweeney's pulmonary] condition were not serious enough to permit a positive diagnosis until 1974 and remained mild until 1980. It cannot be said, therefore, that the employee suffered from a pre-existing permanent partial disability at the time of the injury. Thus, Section 908(f) is not applicable to this case.

ALJ Order at 13. The Board affirmed the ALJ's decision on the narrower ground that because Sweeney's increased disability in 1980 was due to his *nonwork-related* cancer, Bechtel had not established that there was a second work-related injury as required by § 8(f). *See* Board Order at 3. We uphold the determination of the Board.

Even if Bechtel had been able to prove that Sweeney's lung condition did constitute a manifest, pre-existing disability, Bechtel still would not be entitled to § 8(f) relief, because it failed to establish any second, work-related injury that was the immediate cause of Sweeney's permanent total disability. Bechtel correctly points out that § 8(f) may still apply even if the pre-existing disability and the second employment-related injury are related and, moreover, that the work-related aggravation of a pre-existing disability may constitute a second injury for the purposes of § 8(f). *See C & P Tel.,* 564 F.2d at 514. However, here the Board concluded that Bechtel failed to carry its burden of showing that it was Sweeney's continued on-the-job dust exposure that aggravated his lung condition so as to result in his permanent disability and subsequent death. Bechtel claims that "[t]hat uncontradicted medical evidence in this case confirmed that every day's exposure to dust and fumes at work was a further aggravation and exacerbation to Sweeney's pulmonary condition." [8] Appellant's Brief at 36. The medi-

---

8. Bechtel claims that it was *not* required to prove medically that Sweeney suffered an employment-induced aggravation of his pre-existing lung condition. According to Bechtel, the so-called "last employer" rule, set forth in *Travelers Insurance Company v. Cardillo,* 225 F.2d 137 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955), establishes that in occupational disease cases, a second injury is *presumed* to have occurred "with each subsequent exposure to noxious elements." Appellant's Reply Brief at 16, 21. This argument is without merit.

*Cardillo* and the last employer rule state only that when an employee with a pre-existing disability becomes totally and permanently disabled because of noxious elements at his last place of employment, the last employer may be held fully liable for the employee's total disability, "even if the length of employment was so slight that, medically, the injury would, in all probability, not be attributable to that 'last employment.'" *Id.* at 145. The relevance of *Cardillo*, therefore, is simply that last employers will in some circumstances be held liable for an employee's total disability, even though earlier employers contributed to it. *Cardillo* and the

cal evidence in the record on that issue, however, is inconclusive at best. In 1976, Dr. Goodman characterized Sweeney's condition as a "stable pneumoconiosis" and, at his deposition, Dr. Goodman could not establish from the medical evidence that Sweeney's pulmonary condition deteriorated between 1972 and 1980. Moreover, by contrast to other aggravation cases in which § 8(f) coverage has been allowed,[9] there is no suggestion here that a particular, work-related incident—such as an accident resulting in abnormally high dust exposure—aggravated Sweeney's pre-existing lung condition. On the other hand, there is substantial evidence in the record to support the Board's conclusion that it was Sweeney's nonwork-related stomach cancer—and not his continued work for Bechtel at all—that combined with his pulmonary condition to cause a permanent total disability. On that basis, we uphold the Board's determination that Bechtel failed to satisfy the requirements of § 8(f) and is thus not entitled to the limitation of liability.

### III. Conclusion

We agree with the Board that there was substantial evidence to support the ALJ's determination that the actual notice given and claims filed by Sweeney's widow in October 1980 were timely; that claimant was entitled to full compensation for Sweeney's permanent total disability and to death benefits as his widow; and that Bechtel was not entitled to partial relief of liability under § 8(f) of the Act.

*Denied.*

last employer rule in no way relieved Bechtel of its burden to prove to the ALJ that Sweeney suffered a work-related aggravation of his lung condition that amounted to a "second injury" for purposes of § 8(f).

**9.** For example, in *C & P Telephone Co. v. Director, OWCP,* 564 F.2d 503 (D.C.Cir.1977), the

claimant, in an elevator accident at work, sustained a back injury that aggravated her pre-existing back condition. This court held that the back injury that resulted from the elevator accident constituted a second injury for the purposes of § 8(f).